■ LEON A. REICH, Respondent, v BOWERY SAVINGS BANK, Appellant.—In an action, *inter alia,* to recover damages for breach of contract and negligence, the defendant appeals from an order of the Supreme Court, Kings County (Krausman, J.), entered June 25, 1991, which denied its motion for partial summary judgment dismissing the second cause of action asserted in the plaintiff's amended complaint.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the plaintiff's second cause of action asserted in the amended complaint is dismissed.

This appeal concerns two loans that were made by the Bowery Savings Bank (hereinafter the Bowery). One was a personal loan to the plaintiff Leon A. Reich and the other was a loan to a corporation, Securitech, of which Reich was the President and a minority shareholder. The corporate loan was personally guaranteed by Reich and secured by 16,509 shares of stock of another corporation, Rynco Scientific Corporation (hereinafter Rynco). The personal loan was secured by 30,283 shares of Rynco stock.

Reich paid off the personal loan and requested a return of the 30,283 shares of Rynco stock. The Bowery refused to return the collateral and held it as additional security for the corporate loan which was in default and significantly undersecured. The Bowery continued to debit the corporation's account for interest on the loan until it assigned the loan to the Federal Deposit Insurance Corporation (hereinafter FDIC). Eventually, the FDIC settled with Reich, but, in the interim, the Rynco stock that had secured the loan had become worthless.

Reich's complaint against the Bowery initially contained: (1) a first cause of action, to recover damages for the Bowery's alleged breach of contract in refusing to return the personal loan collateral after that loan had been paid off, (2) a second cause of action to recover damages for the Bowery's alleged negligence in permitting the value of the stock to decrease, and (3) a third cause of action for the imposition of an equitable lien or constructive trust upon the Bowery's assets in a sum equal to the value of the collateral pledged for the personal loan.

The Bowery moved for summary judgment dismissing the complaint, and Reich cross-moved for summary judgment. The Supreme Court, in an order dated May 15, 1990, denied the Bowery's motion as to the first cause of action sounding in breach of contract, and granted it as to the second cause of action, sounding in negligence, finding that cause of action to be time-barred. The court did not mention the third cause of action. The first and third causes of action are the subject of a related appeal (see, Reich v Bowery Sav. Bank, 183 AD2d 884 [decided herewith]). Reich then moved for leave to serve an amended complaint adding a new second cause of action based on UCC 9-207 (1) and 9-504 (3). That motion was granted by order dated October 18, 1990. Thereafter, the Bowery moved for summary judgment dismissing the new second cause of action. The court denied the motion, treating it as a motion to reargue Reich's prior motion for leave to serve an amended complaint.

The Supreme Court erred in treating the Bowery's motion for summary judgment dismissing the new second cause of action as a motion to reargue Reich's previously granted motion for leave to serve an amended complaint (see, Cruz v S & S Corrugated Paper Mach. Co., 102 AD2d 840). Moreover, upon an examination of the merits of the motion, we find that the court should have granted summary judgment to the Bowery dismissing that cause of action.

The record reveals that in October 1985, when the corporation defaulted on its corporate loan and Reich requested the return of the collateral securing his personal loan, the Rynco stock was worth approximately $3.50 per share. Its value rose to approximately $5 per share between October 1985 and June 1986. During that time, on February 25, 1986, the Bowery assigned the corporate note and all of the collateral that it held with respect thereto (i.e., the 46,792 shares of stock) to the FDIC. However, in June 1986 the stock began to decline steadily in value until, by October 1986, it was worthless.

In view of these undisputed facts, it cannot be said that the Bowery failed to exercise reasonable care in the custody and preservation of Reich's collateral (see, UCC 9-207 [1]). When the Bowery transferred the Rynco stock to the FDIC, it was worth $3.50 per share. It was not until the stock had been in the FDIC's possession for approximately eight months that it began to decline in value. By the time it became worthless, the stock had long been out of the Bowery's possession. Since the duty imposed by UCC 9-207 (1) relates to stock in the

secured party's *possession,* liability cannot be imposed on the Bowery for the failure to sell stock no longer in its possession.

Additionally, there is no evidence in the record that Reich ever requested the Bowery to sell the stock before it lost its value. This court has held that when a demand is made of a creditor to liquidate the collateral and, after the refusal to liquidate, the collateral substantially declines in value, the failure to liquidate, if negligent, is a breach of the secured party's duty to use reasonable care in the custody and preservation of collateral *(see, Federal Deposit Ins. Corp. v Marino Corp.,* 74 AD2d 620; *see also, Marine Midland Bank v CMR Indus.,* 159 AD2d 94). However, Reich has not cited any authority for the proposition that a secured party is liable for the failure to liquidate where there has been no demand to do so.

The requirement found in UCC 9-504 (3) that the "sale or other disposition" of collateral must be "commercially reasonable", has no application when, as here, the secured party transfers the collateral to one who is subrogated to the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of collateral within the meaning of UCC article 9 *(see,* UCC 9-504 [5]). Moreover, there is no merit to Reich's contention that the Bowery violated UCC 9-504 (3) by failing to give him reasonable notification of the transfer of his collateral to the FDIC. The Rynco stock was "collateral * * * of a type customarily sold on a recognized market" and, therefore, exempt from the notice requirements of UCC 9-504 (3) *(see, Marine Midland Bank-Rochester v Vaeth,* 88 Misc 2d 657, 659). Bracken, J. P., Rosenblatt, Miller and O'Brien, JJ., concur.