A93A1060. LAKE TIGHTSQUEEZE, INC. et al. v. CHRYSLER FIRST FINANCIAL SERVICES CORPORATION.
(435 SE2d 486)

BLACKBURN, Judge.

The appellants, Lake Tightsqueeze, Inc. and George E. McGriff, Jr., its president, brought this action against the appellee, Chrysler First Financial Services Corporation (Chrysler), based upon the appellee's breach of an "agreement" executed by the parties for the future financing of residential lots by the appellee. The appellee responded, asserting several defenses and a counterclaim for payment based upon an unconditional guarantee executed in its favor by appellant McGriff on a loan between appellant Lake Tightsqueeze, Inc. and Chrysler. The appellants amended the complaint to assert a claim for fraud and specifically asserted that the appellee made intentional, reckless and negligent misrepresentations to the appellants, both orally and in writing. After discovery was commenced, the appellee moved for summary judgment on the appellants' claims and on the appellee's counterclaim, and both motions were granted by the trial court. This appeal followed.

The "contract" that is in issue is a letter of June 5, 1990 written by Robert Hardin, the branch manager of Chrysler, to McGriff confirming an agreement reached by Chrysler and appellant Lake Tightsqueeze, Inc. concerning a loan to Lake Tightsqueeze, Inc. in the amount of $125,000, and a conditional agreement made by Chrysler to provide future financing on lots for Silver Leaf Resort area. The letter provided that the appellants had to meet several conditions before any future financing would be provided on the residential lots. With the exception of one application involving the sale of a clubhouse,

McGriff did not submit any applications for approval, and pre-approval of all credit applications was one of the conditions addressed in the June 5, 1990 letter.

Charles Kersey, the assistant vice-president of Chrysler, stated in his deposition that the June 5, 1990 letter was only written to assist McGriff because he had indicated that he needed the letter as proof of Chrysler's future intentions. This letter was not intended to indicate that Chrysler promised to provide financing of up to 1.5 million dollars on the residential lots. The letter merely expressed the future intentions of Chrysler, subject to the conditions contained therein. Kersey further indicated that it was not the standard procedure of Chrysler to put conditional intentions of this sort in writing. Robert Hardin indicated in his deposition that the June 5, 1990 document was a letter of intent to confirm what was discussed in an earlier meeting on May 23, 1990. Chrysler made loans to individual homeowners and did not provide a line of credit to developers. When McGriff inquired about the financing of the lots after substantial changes in the circumstances of the subdivision and months after their initial meeting, Hardin informed McGriff that Chrysler no longer loaned money on individual real estate lots but was focusing on credit purchases for small retail items at that time.

In her deposition, Mary Braden, branch manager in the Decatur office, also testified that Chrysler does not make loan commitments to developers for the purchase of lots in any development. In her affidavit, she further noted that the promissory note executed by Lake Tightsqueeze, Inc. and the continuing guarantee agreement executed by McGriff were in default.

McGriff has admitted in his deposition that there were no oral representations made to him by Chrysler, and that Chrysler's financing of the residential lots was contingent upon the approval of the application of consumers by Chrysler. Chrysler did finance nine loans on properties that McGriff developed and also took applications on the purchase of residential property at an auction sponsored by the appellants, although no lots were sold at that time because of the low bids that were received by the appellants. McGriff was unaware of any other loans submitted to Chrysler for approval and he acknowledged that no promises were made to him on behalf of Chrysler other than the statements made in the June 5, 1990 letter. In his affidavit, he acknowledges that the letter was not a complete agreement.

1. In their first enumeration of error, the appellants contend that the trial court erred in granting the appellee's motion for summary judgment as to appellants' claim for breach of contract. We disagree.

The letter of June 5, 1990, written by the branch manager of Chrysler was not an enforceable contract. " 'Unless an agreement is reached as to all terms and conditions and nothing is left to future

negotiations, a contract to enter into a contract in the future is of no effect. (Cits.)' [Cit.]" *Hartrampf v. Citizens &c. Realty Investors*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981). It is clear from the conditions in the letter that several contingencies would need to be met before the residential lots would be financed by Chrysler. Even assuming that the letter of intent was a contract, our state Supreme Court has held, "[w]here a contract is contingent on the meeting of some condition, it is not enforceable by either party until the condition has been met. . . ." *Moore v. Buiso*, 235 Ga. 730, 731 (1) (221 SE2d 414) (1975). Inasmuch as the financing of the residential lots in the instant case was contingent upon several conditions, which have not been shown to have been met, we conclude that summary judgment adjudication was proper.

2. In their second enumeration of error, the appellants contend that the trial court erred in granting the appellee's motion for summary judgment as to the appellants' promissory estoppel claim. However, in order to prevail on a promissory estoppel claim, "[the appellants] must demonstrate that (1) the [appellee] made certain promises, (2) the [appellee] should have expected that the [appellants] would rely on such promises, and (3) the [appellants] did in fact rely on such promises to [their] detriment. [Cit.]" *Doll v. Grand Union Co.*, 925 F2d 1363, 1371 (5) (11th Cir. 1991). See also OCGA § 13-3-44. The record is devoid of any promises made by the appellee and appellant McGriff has admitted in his deposition that the appellee did not make any promises to the appellants. Further, the appellants have not shown that they relied to their detriment on any promises made by the appellee or that the appellee should have expected that the appellants would rely on such promises. Therefore, this enumeration is without merit.

3. The appellants contend that the trial court erred in granting the appellee's motion for summary judgment for negligent, reckless, and intentional misrepresentations. However, the appellants have now shown that any misrepresentations have been made by the appellee and have in fact admitted that such representations have not been made. Consequently, this enumeration is also without merit.

4. In their fourth enumeration of error, the appellants contend that the trial court erred in summarily adjudicating their claim for breach of implied covenant of good faith under the Uniform Commercial Code. However, the implied obligation of good faith under the Uniform Commercial Code, specifically OCGA § 11-1-203, is applicable to sales of goods. Inasmuch as the instant case does not involve the sale of goods but the financing of residential lots, the obligation of the good faith doctrine under the Uniform Commercial Code is inapplicable. Moreover, even assuming arguendo that this doctrine was applicable to the facts of this case, the U. S. District Court has held

in *Mgmt. Assistance v. Computer Dimensions*, 546 FSupp. 666, 677 (9) (N.D. Ga. 1982), that the failure to act in good faith in the performance of contracts or duties under the Uniform Commercial Code does not state an independent claim for which relief may be granted. Consequently, this enumeration is also without merit.

5. The appellants further contend that the trial court erred in granting summary judgment in favor of the appellee because the appellee tortiously interfered with their contractual relationships. " ' "In establishing a cause of action for malicious (or tortious) interference with business relations, [the appellants] must demonstrate that the [appellee] (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the [appellants], and (4) for which the [appellants] suffered some financial injury." (Cits.)' [Cit.]" *Nationwide Advertising Svc. v. Thompson Recruitment Advertising*, 183 Ga. App. 678, 679-680 (359 SE2d 737) (1987); *Shepard v. Federal Land Bank*, 205 Ga. App. 254, 258 (3) (421 SE2d 763) (1992). "A cause of action for intentional interference with contractual rights must be based on '(t)he intentional and non-privileged interference by a third party with *existing* contractual rights and relations. . . . (Cits.)' [Cit.]" (Emphasis supplied.) *Life Chiropractic College v. Fuchs*, 176 Ga. App. 606, 609 (2) (337 SE2d 45) (1985). The appellants have not shown that there are any existing contracts with third parties or that there has been any interference in any contractual relationships by the appellee. Moreover, a claim for tortious interference is only viable when the interference is done by one who is a stranger to the contract. *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting of Atlanta*, 205 Ga. App. 57, 60 (1) (421 SE2d 295) (1992). In *Jefferson-Pilot*, where the buyer, seller, and lenders were parties to a set of contracts, which provided for the financing, construction, and transfer of ownership of a radio station, this court noted that the buyer could not have tortiously interfered with the contractual relationship between the seller and its lenders because the buyer was not a stranger to the contract, but in fact, was a third-party beneficiary of the contract. Inasmuch as the appellee was not a stranger and would benefit from any contracts entered into between the appellants and residential purchasers, the appellee could not have tortiously interfered with any purchase contracts. Accordingly, this enumeration is also without merit.

6. In their final enumeration of error, the appellants contend that the trial court erred in granting the appellee's motion for summary judgment as to the appellee's counterclaim for payment on a loan unconditionally guaranteed by appellant McGriff. We disagree.

In his responses to the appellee's discovery, appellant McGriff admits that payments have not been made timely pursuant to the

loan agreement between Chrysler and Lake Tightsqueeze, Inc. and pursuant to the unconditional guarantee of payment. Although the appellants have asserted as a defense a right to set-off any financial obligation owed to the appellee based upon the appellee's refusal to enter into additional financing agreements on behalf of the appellants, this court has recently denounced such action. In *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 401 (1) (422 SE2d 277) (1992), this court held that " '[a] lender's refusal to make a second loan, or even misrepresentations that it would make a second loan, does not bar the lender from recovery of the amount owed under the first loan.' [Cit.]" Inasmuch as the appellants do not have a right of set-off against their obligation under the loan between appellant Lake Tightsqueeze, Inc. and the appellee, the trial court did not err in granting the appellee's motion for summary judgment on its counterclaim.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 23, 1993 —<br>RECONSIDERATION DENIED SEPTEMBER 8, 1993 

*James A. Dunlap, Jr.*, for appellants.
*Davis & Walker, Joseph G. Davis, Jr., Shawn D. Stafford*, for appellee.