A94A0700. NICKELL v. IAG FEDERAL CREDIT UNION.
(445 SE2d 335)

BEASLEY, Presiding Judge.

In this appeal from a grant of summary judgment, appellant has the benefit of all favorable evidentiary inferences.

Nickell had a revolving credit loan from IAG secured by shares of IBM stock. Under the loan agreement, IAG had the right to liquidate the stock unilaterally when Nickell was in default and Nickell could not sell the shares without IAG's permission. In October 1987 changes in the value of the stock resulted in the loan being undercapitalized, and IAG sent Nickell a letter on October 27 informing him of this fact. The letter stated that Nickell must take immediate action to fully secure the loan and discussed how this should be done if he wished to deposit more shares or transfer funds held in an IAG account. The letter required a response in 15 days and stated that he "must respond by completing the coupon below." At the bottom of the letter were three options, each with a space in which to place a check mark. One option addressed the deposit of shares, one addressed the transfer of funds, and one stated "Please sell my stocks (whole shares only), I agree to pay the deficiency amount." Nickell checked this third option and returned the form within the time specified.

IAG did not sell Nickell's shares when it received the form. Had it done so, Nickell's liability for deficiency would have been approxi-

mately $35,000. He was informed on December 7, 1987 that his loan was undercapitalized by $66,238.29. He informed IAG that he could not absorb such a deficiency, and IAG agreed not to liquidate until advantageous to Nickell. Nickell continued to make interest payments totaling $105,379.78 through March 1991.

IAG liquidated all of Nickell's collateral, leaving him with a sizeable deficiency, and sued him for the principal sum of $80,160.81, plus interest, attorney fees, and costs. It was awarded summary judgment. Nickell counterclaimed for breach of contract and contends that if IAG had liquidated his shares in response to his November 9 election his debt would be considerably smaller. The loan agreement contains a provision that New York law governs disputes arising under it.

1. Nickell argues that IAG had an obligation to sell the shares under a New York statute governing the rights and duties of a holder of collateral. N. Y. Uniform Commercial Code § 9-207 (McKinney 1990). It states in part that "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession." N. Y. Uniform Commercial Code § 9-207 (1) (McKinney 1990). The credit agreement also includes a pledge by IAG to use "reasonable care for the custody and preservation of [the] collateral." Failure to use reasonable care creates liability on the part of the secured party for any losses due to the failure. N. Y. Uniform Commercial Code § 9-207 (3) (McKinney 1990).

Nickell argues that this duty was breached by the failure to sell the shares on or about November 12, 1987, when IAG should have received the election he mailed on November 9. IAG responds that the decision of whether to liquidate was reserved to it alone under the credit agreement, that the agreement prevented Nickell from selling without its permission, and that § 9-207 did not impose upon IAG the duty claimed by Nickell. The issue then is simply what is the extent of the duty imposed by New York's § 9-207.

It does not appear that New York's highest court, the Court of Appeals, has addressed this issue; all cases cited by the parties or identified by us are from the intermediate Supreme Court, Appellate Division, or lower courts. Nickell cites *Grace v. Sterling, Grace & Co.*, 289 NYS2d 632 (1968), for the proposition that whether the lender used reasonable care to preserve the value of securities pledged as collateral is a fact question. IAG cites *First Trust &c. Co. v. W. W. Conde Hardware Co.*, 262 NYS2d 565 (1965), for the proposition that there is no duty to sell pledged securities in a declining market to preserve their value.[1] To the extent that there is a conflict in these

---

[1] Other cases addressing this issue cited by IAG are either from other jurisdictions or do not rely upon § 9-207.

precedents as to the general duty under § 9-207, we believe the later case of *Grace v. Sterling* should control.

This case, however, does not require us to identify the full scope of the duty imposed by New York's Uniform Commercial Code § 9-207. It is clear that under that Code section "when a demand is made of a creditor to liquidate the collateral and, after refusal to liquidate, the collateral substantially declines in value, the failure to liquidate, if negligent, is a breach of the secured party's duty to use reasonable care in the custody and preservation of collateral. [Cits.]" *Reich v. Bowery Savings Bank*, 583 NYS2d 980, 982 (1992). We cannot say as a matter of law that Nickell's response to the October 27, 1987 letter, with an indication that he had elected liquidation, does not constitute a "demand" to sell; to the contrary, it appears that it does. See *Fed. Deposit Ins. Corp. v. Frank L. Marino Corp.*, 425 NYS2d 34 (1980). Whether the failure to liquidate was negligent is a jury question and the grant of summary judgment as to this issue was error.

2. Our decision that summary judgment was improper does not render moot the remainder of Nickell's appeal, as he advances other theories that could be established at trial. Nickell maintains that the October 27 letter with its "election coupon" at the bottom constituted an offer to liquidate his shares and apply the proceeds to the loan, which he accepted. He contends that IAG then breached this agreement when it failed to sell his shares in a reasonable time after receiving his acceptance. The original agreement, as it appears in the record here, does not contain any clause limiting modifications or additional agreements.

The letter of October 27 appears to include an offer to modify the original credit agreement. The letter outlined the problem and referred to Nickell's options. It demanded an election on Nickell's part as to how he would address the undercollateralization, providing a response form at the bottom. It required response in 15 days and stated that he "must respond by completing the coupon below." The coupon itself listed sale and liability for any deficiency as an option; sale was not a course of action first proposed by Nickell. Additionally, it appears that the line allowing the option of sale was added to the IAG's undercollateralization notice specifically to give borrowers an option as to what could be done to correct the problem. Nickell complied with the response terms as set forth in the letter. These elements comport with contract formation under New York law, *Valashinas v. Koniuto*, 124 NE2d 300 (N. Y. 1954), and Nickell's response created a modification to the original agreement. Such a written modification need not be supported by consideration. N. Y. General Obligations Law, § 5-1103 (McKinney 1990).

It was error for the trial court to award summary judgment on the issue of whether the October 27 letter and its response established

a modification of the original agreement.

3. Nickell maintains that on December 7, 1987, an oral modification of the loan agreement was made, and that this was breached. Again, the original credit agreement, as it appears in the record, does not contain any clause prohibiting oral modification. IAG contends that any oral agreement was not supported by consideration. Nickell maintains that the breach of IAG's duty of care under § 9-207 could constitute consideration. That, however, is not a complete statement of the law; it is the promise to forbear from enforcing a cause of action one might have that can constitute consideration, not the mere presence of the cause of action. *Joab Commercial Laundries v. Reeder*, 552 NYS2d 361, 362 (1990). The record does show evidence of mutual promises to forbear from asserting rights, and consideration does exist for the December 7, 1987, oral modification.

IAG states that Nickell ratified any departure from the oral agreement, but the communications to which it cites do not show ratification of IAG departure from the December 7 agreement.

4. Nickell maintains that promissory estoppel would also bar summary judgment for IAG, based on his reliance upon the representations made in the October 27 letter and the November 9 conversation. As a promissory estoppel theory lies outside the contract, it is not governed by New York law. "In order to prevail on a promissory estoppel claim, '[Nickell] must demonstrate that (1) [IAG] made certain promises, (2) [IAG] should have expected that [Nickell] would rely on such promises, and (3) [Nickell] did in fact rely on such promises to [his] detriment. (Cit.)' [Cit.] See also OCGA § 13-3-44." *Lake Tightsqueeze, Inc. v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178, 180 (2) (435 SE2d 486) (1993).

Nickell has met these requirements. The October 27 letter carries the implied promise that IAG would liquidate his stock if he so elected. According to his verified answer and deposition testimony, IAG promised to cooperate with him and not liquidate any stocks unless advantageous to him. It should have been expected that reliance on these promises would prevent Nickell from initiating any efforts of his own to liquidate the stocks on November 10, 1987, or any subsequent date, before it was selling at a price more advantageous to him. Although there is not straightforward testimony that Nickell did not pursue liquidation because of the promises, that is the clear inference. As Nickell paid all outstanding interest for a significant period after the promises were made, his reliance was patently to his detriment.

5. Finally, Nickell contends that an award of attorney fees was improper as there was no proof of the amount of reasonable fees submitted. Our decision that summary judgment was not proper makes this issue moot, even had proof of reasonable attorney fees been presented.

*Judgment reversed. Andrews and Johnson, JJ., concur.*

DECIDED JUNE 9, 1994.

*Boyce, Ekonomou & Atkinson, Andrew J. Ekonomou, Howell A. Hall*, for appellant.
*Macey, Wilensky, Cohen, Wittner & Kessler, Richard B. Maner, Susan L. Howick*, for appellee.