S95A1591. WRIGHT v. NEWMAN et al.

(467 SE2d 533)

CARLEY, Justice.

Seeking to recover child support for her daughter and her son, Kim Newman filed suit against Bruce Wright. Wright's answer admitted his paternity only as to Newman's daughter and DNA testing subsequently showed that he is not the father of her son. The trial court nevertheless ordered Wright to pay child support for both children. As to Newman's son, the trial court based its order upon Wright's "actions in having himself listed on the child's birth certificate, giving the child his surname and establishing a parent-child relationship. . . ." According to the trial court, Wright had thereby

> allow[ed] the child to consider him his father and in so doing deterr[ed Newman] from seeking to establish the paternity of the child's natural father[,] thus denying the child an opportunity to establish a parent-child relationship with the natural father.

We granted Wright's application for a discretionary appeal so as to review the trial court's order requiring that he pay child support for Newman's son.

Wright does not contest the trial court's factual findings. He asserts only that the trial court erred in its legal conclusion that the facts authorized the imposition of an obligation to provide support for Newman's son. If Wright were the natural father of Newman's son, he would be legally obligated to provide support. OCGA § 19-7-2. Likewise, if Wright had formally adopted Newman's son, he would be legally obligated to provide support. OCGA § 19-8-19 (a) (2). However, Wright is neither the natural nor the formally adoptive father of the child and "the theory of 'virtual adoption' is not applicable to a dispute as to who is legally responsible for the support of minor children." *Ellison v. Thompson*, 240 Ga. 594, 596 (242 SE2d 95) (1978).

Although Wright is neither the natural nor the formally adoptive father of Newman's son and the theory of "virtual adoption" is inapplicable, it does not necessarily follow that, as a matter of law, he has no legal obligation for child support. A number of jurisdictions have recognized that a legally enforceable obligation to provide child support can be "based upon parentage *or* contract. . . ." (Emphasis supplied.) *Albert v. Albert*, 415 S2d 818, 819 (Fla. App. 1982). See also Anno., 90 ALR2d 583 (1963). Georgia is included among those jurisdictions. *Foltz v. Foltz*, 238 Ga. 193, 194 (232 SE2d 66) (1977). Accordingly, the issue for resolution is whether Wright can be held liable for child support for Newman's son under this state's contract law.

There was no formal written contract whereby Wright agreed to support Newman's son. Compare *Foltz v. Foltz*, supra. Nevertheless, under this state's contract law,

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

OCGA § 13-3-44 (a). This statute codifies the principle of promissory estoppel. *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322 (1) (283 SE2d 262) (1981). In accordance with that principle,

> "[a] party may enter into a contract invalid and unenforceable, and by reason of the covenants therein contained and promises made in connection with the same, wrongfully cause the opposite party to forego a valuable legal right to his detriment, and in this manner by his conduct waive the right to repudiate the contract and become estopped to deny the opposite party any benefits that may accrue to him under the terms of the agreement." [Cits.]

*Pepsi Cola Bottling Co. v. First Nat. Bank of Columbus*, 248 Ga. 114, 116-117 (2) (281 SE2d 579) (1981).

The evidence authorizes the finding that Wright promised both Newman and her son that he would assume all of the obligations and responsibilities of fatherhood, including that of providing support. As the trial court found, this promise was evidenced by Wright's listing of himself as the father on the child's birth certificate and giving the child his last name. Wright is presumed to know "the legal consequences of his actions. Since parents are legally obligated to support their minor children, [he] accepted this support obligation by acknowledging paternity." *Marshall v. Marshall*, 386 S2d 11, 12 (Fla. App. 1980). There is no dispute that, at the time he made his commitment, Wright knew that he was not the natural father of the child. Compare *NPA v. WBA*, 380 SE2d 178 (Va. App. 1989). Thus, he undertook his commitment knowingly and voluntarily. Moreover, he continued to do so for some ten years, holding himself out to others as the father of the child and allowing the child to consider him to be the natural father.

The evidence further authorizes the finding that Newman and her son relied upon Wright's promise to their detriment. As the trial court found, Newman refrained from identifying and seeking support from the child's natural father. Had Newman not refrained from do-

ing so, she might now have a source of financial support for the child and the child might now have a natural father who provided emotional, as well as financial, support. If, after ten years of honoring his voluntary commitment, Wright were now allowed to evade the consequences of his promise, an injustice to Newman and her son would result. Under the evidence, the duty to support which Wright voluntarily assumed ten years ago remains enforceable under the contractual doctrine of promissory estoppel and the trial court's order which compels Wright to discharge that obligation must be affirmed. See *Nygard v. Nygard*, 401 NW2d 323 (Mich. App. 1986); *Marshall v. Marshall*, supra; *In re Marriage of Johnson*, 152 Cal. Rptr. 121 (Cal. App. 1979); *Hartford v. Hartford*, 371 NE2d 591 (Ohio App. 1977).

*Judgment affirmed. All the Justices concur, except Benham, C. J., who dissents.*

SEARS, Justice, concurring.

I concur fully with the majority opinion. I write separately only to address the dissenting opinion's misperception that Newman has not relied upon Wright's promise to her detriment.

It is an established principle in Georgia that a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.[1] This doctrine, known as "promissory estoppel," prevents a promisor from reneging on a promise, when the promisor should have expected that the promisee would rely upon the promise, and the promisee does in fact rely upon the promise to her detriment.[2] Sufficient consideration to enforce a contractual promise pursuant to promissory estoppel may be found in any benefit accruing to the promisor, or any reliance, loss, trouble, disadvantage, or charge imposed upon the promisee.[3]

Bearing these principles in mind, and as explained very well in the majority opinion, it is clear that Wright's commitment to Newman to assume the obligations of fatherhood as regards her son are enforceable. Specifically, it is abundantly clear that Wright should have known that Newman would rely upon his promise, especially after he undertook for ten years to fulfill the obligations of fatherhood. In this regard, it could hardly have escaped Wright's notice that Newman refrained from seeking to identify and obtain support from the

---

[1] OCGA § 13-3-44; *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322, 322-323 (283 SE2d 262) (1981); see *Pepsi Cola Bottling Co. v. First Nat. Bank of Columbus*, 248 Ga. 114, 116 (281 SE2d 579) (1981); Restatement (Second) of Contracts, § 90 (1981 and Supp. 1992).

[2] *Doll v. Grand Union Co.*, 925 F2d 1363, 1371 (11th Cir. 1991).

[3] *Pepsi Cola Bottling Co.*, 248 Ga. at 116; see *Zachos v. C & S Nat. Bank*, 213 Ga. 619, 624 (100 SE2d 418) (1957); *Folks, Inc. v. Dobbs*, 181 Ga. App. 311 (352 SE2d 212) (1986).

child's biological father while Wright was fulfilling his commitment to her. Moreover, Newman did in fact rely upon Wright's promise, to her detriment when, ten years after he undertook the obligations of fatherhood, Wright reneged on his promise.

Promissory estoppel requires only that the reliance by the injured party be *reasonable*.[4] In this case, it cannot seriously be argued that Newman's reliance was anything other than reasonable, as she had absolutely no indication that Wright would ever renege, especially after he fulfilled his promise for such a long time. Moreover, contrary to the dissent's implicit assertion, promissory estoppel does not require that the injured party exhaust all other possible means of obtaining the benefit of the promise from any and all sources before being able to enforce the promise against the promisor. In this regard, it is illogical to argue that Newman, after reasonably relying upon Wright's promise for ten years, can now simply seek to determine the identity of the biological father and collect support from him. First, there is nothing in the case law that requires Newman to do so before being entitled to have Wright's promise enforced. Second, this requirement would be an imposing, if not an impossible, burden, and would require Newman not only to identify the father (if possible), but also to locate him, bring a costly legal action against him, and to succeed in that action. Imposing this requirement would effectively penalize Newman for no reasons other than (1) her reasonable reliance upon a promise that was not kept, and (2) for allowing herself to be dissuaded by Wright from seeking the identity of the biological father. As noted, nowhere does the case law support imposing such a requirement, and none of the facts in this case support doing so now.

Finally, there can be no doubt that, unless Wright's promise to Newman is enforced, injustice will result. Given the approximately ten years that have passed since the child's birth, during which time Wright, for all purposes, *was* the child's father, it likely will be impossible for Newman to establish the identity of the child's biological father, bring a successful paternity action, and obtain support from that individual. Consequently, if Wright is allowed to renege on his obligation, Newman likely will not receive any support to assist in the cost of raising her son, despite having been promised the receipt of such by Wright. Furthermore, an even greater injustice will be inflicted upon the boy himself. A child who has been told by any adult, regardless of the existence of a biological relationship, that he will always be able to depend upon the adult for parenting and sustenance, will suffer a great deal when that commitment is broken. And

---

[4] *Fidelity &c. Co. v. West Point Constr. Co.*, 178 Ga. App. 578 (344 SE2d 268) (1986); see *Doll,* supra.

when a child suffers under those circumstances, society-at-large suffers as well.[5]

Because Wright's promise is capable of being enforced under the law, and because I believe that Wright's promise must be enforced in order to prevent a grave miscarriage of justice, I concur fully in the majority opinion.

BENHAM, Chief Justice, dissenting.

I respectfully dissent. While I agree with the majority opinion's statement that liability for child support may be based on promissory estoppel in a case where there is no statutory obligation or express contract, I first note that this issue was not brought by either of the parties. Further, there is a critical element that must be shown for promissory estoppel to apply. In addition to making a showing of expectation and reasonable reliance, a person asserting liability on the theory of promissory estoppel must show that she relied on the promise to her detriment. *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516 (445 SE2d 335) (1994); *Lake Tightsqueeze, Inc. v. Chrysler First Fin. Svcs. Corp.*, 210 Ga. App. 178 (435 SE2d 486) (1993). The majority states that Newman and her son incurred detriment by refraining from identifying and seeking support from the child's natural father. However, the record is completely bereft of any evidence that Newman met her burden of proof as to promissory estoppel, and the majority fails to state how she is prevented from now instituting a child support action against the natural father. Newman has not alleged, nor does the record reveal, that she does not know the identity of the natural father, nor does she show that the natural father is dead or unable to be found. Consequently, Newman has not shown that she is now unable to do what she would have had to do ten years ago — seek support from the natural father.

In fact, Wright contends, and Newman does not refute, that Newman severed the relationship and all ties with Wright when the child was approximately three years old. For approximately the next five years, until the child was eight, Newman and Wright did not communicate. Only for the past two years has Wright visited with the child. Importantly, Wright contends that during the past seven years he did not support the child. Thus, taking Wright's undisputed con-

---

[5] Wright is also morally obligated to provide support for Newman's son. Merely because an obligation may not be capable of legal enforcement, one is not necessarily free to act in any way that he might choose. In addition to our legal duties, we are also bound by a consciousness of duty that is based upon fundamental values such as honor, truth, and responsibility. The "non-legal" obligations that we undertake are no less sacrosanct merely because they may not be capable of legal enforcement. The moral (as opposed to the legal) dilemma faced by Wright lies within his conscience, heart, and soul. He need have looked no further than there to determine what he must do in this case.

tentions as true, any prejudice incurred by Newman because of the passage of ten years in time is not due to Wright's actions, since, at least for the past seven years, Newman has been in the same situation — receiving no support payments from Wright. Thus, although Wright may be morally obligated to support the ten-year-old child, he is not legally obligated to do so because Newman has failed to show that she or the child incurred any detriment by Wright's failure to fulfill his promise made ten years ago.

For the foregoing reasons, I dissent.

DECIDED MARCH 4, 1996 —
RECONSIDERATION DENIED MARCH 29, 1996.

*R. Scott Cunningham,* for appellant.

*Michael J. Bowers, Attorney General, Kevin M. O'Connor, Assistant Attorney General, Dianne Cook,* for appellees.