A97A0257. SMITH v. DEPARTMENT OF HUMAN RESOURCES.
(487 SE2d 94)

BLACKBURN, Judge.

Paul R. Smith appeals the trial court's denial of his motion to reopen a consent order requiring him to pay child support for a minor child, born out of wedlock, on June 6, 1989 (shown in complaint as

June 6, 1986), based on newly discovered evidence of his non-paternity.

Smith contends that after dating for approximately one year, he and Cynthia Moss, the mother, lived together from the summer of 1988 until the fall of 1991. During this period, Ms. Moss conceived and delivered two children. He further contends that the parties continued to live together until the fall of 1991, when Ms. Moss vacated their residence. Because of his understanding that their relationship was monogamous, Smith signed a Consent Administrative Order and a Consent Income Deduction Order on July 10, 1992, acknowledging paternity and agreeing to pay support for the two minor children. Smith contends that he had no reason at that point in time to doubt his paternity nor to question the veracity of the mother. The Office of Child Support Enforcement subsequently filed a complaint against Smith in Fulton County Superior Court, alleging that he had failed to provide adequate support for such children. Smith entered into a consent order in Fulton County Superior Court on January 5, 1993.

Smith states that long after the separation of the parties, he learned that Ms. Moss may have been engaged in affairs with other men during their period of cohabitation, and that he may not be the father of the two children. After unsuccessfully seeking help from the Office of Child Support Enforcement, Smith had himself and the children genetically tested during a visitation period on July 31, 1995. Upon determining that he was the father of A. S., but not the father of D. S., Smith filed a motion to reopen the judgment of paternity and child support as to D. S. on October 24, 1995.

In the motion, Smith stated that he had signed the consent order in the belief that he was the father, but that a subsequent blood test had conclusively established that he could not be the father of one of the children. Smith attached to the motion a copy of a report from a genetic testing company stating that he could not be the father of one of the children.

A hearing on Smith's motion was scheduled for March 11, 1996. Smith contends that prior to holding the hearing, the court denied the motion, holding that the issue of Smith's paternity was res judicata and that Smith had failed to obtain a court order authorizing genetic testing. There is no hearing transcript in the record. We have limited our review to the ruling of the court and the record in this matter.

1. The court erred in holding that the doctrine of res judicata precluded reconsideration of the issue of Smith's paternity. Smith's motion to reopen the judgment was in substance an extraordinary motion for new trial based on newly discovered evidence. See *Roddenberry v. Roddenberry*, 255 Ga. 715, 717 (342 SE2d 464) (1986); *Dept. of Human Resources v. Browning*, 210 Ga. App. 546, 547 (1) (a)

(436 SE2d 742) (1993) (construing "Petition for Blood Test" as extraordinary motion for new trial). "[S]ince this is an attempt to set aside a judgment through the mechanism of an extraordinary motion for new trial, the doctrines of res judicata and estoppel by judgment are inapposite." *Roddenberry*, supra at 717.

"On an extraordinary motion for a new trial based on newly discovered evidence, it is incumbent on the movant to satisfy the court: (1) that the newly discovered evidence has come to his knowledge since the trial; (2) that want of due diligence was not the reason that the evidence was not acquired sooner; (3) that the evidence was so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness is attached to the motion or its absence accounted for; and (6) that the new evidence does not operate solely to impeach the credit of a witness." (Punctuation omitted.) Id. at 717.

In this case, it is clear from its order that the trial court did not consider the above factors, but instead relied on its erroneous determination that consideration of new evidence regarding Smith's paternity was barred by res judicata. See *Browning*, supra at 548 (1) (b).

2. Smith attached to his appellate brief an affidavit setting forth facts regarding his execution of the consent orders and his subsequent testing of the children. Although we have not considered such affidavit on appeal as it was not considered by the trial court, we make the following observations.

If the above evidence is true, Smith's belief that the children were his, and his reliance on the mother's representations that he was the father, should be considered as factors in evaluating his diligence in obtaining the new evidence. The fact that Smith did not demand a paternity test before signing the consent orders does not necessarily demonstrate lack of due diligence. Where a purported father has no reason to suspect the fidelity of the mother, it may not be unreasonable, and may in fact be admirable, for him to acknowledge his paternity without further proof thereof. The law should not punish a purported father for failing to insist on a paternity test when he has no reason to believe that he is not the father. A contrary rule would invite suspicion and distrust, and essentially require all purported fathers, upon divorce or separation, to accuse their spouses or partners of infidelity by demanding proof of paternity. In addition to fostering animosity between the parents, a rule encouraging fathers to contest paternity could also have a negative impact on the father-child relationship.[1]

---

[1] *Roddenberry* does not establish an absolute rule that failure to require a paternity test demands a finding of lack of diligence. In that case, the Supreme Court affirmed the trial court's denial of an extraordinary motion for new trial based on newly discovered evi-

While it is the policy of this state to require fathers to support their minor children, it is not the policy to extort such support from persons who are not in fact the fathers. Indeed, if the facts are as Smith represents, we can see no legitimate reason why the DHR, as an agent of the state and of its citizens, would seek to enforce the legal fiction of his paternity. It does not appear that the child was, in fact, deprived of support, as the record indicates that the child was receiving public assistance for which the DHR sought reimbursement from Smith. See OCGA § 19-11-5.

Smith contends the trial court relied on *Wright v. Newman*, 266 Ga. 519 (467 SE2d 533) (1996), in issuing its decision. Although such reliance is not apparent from the record, we note that *Wright* is not controlling in any event. In *Wright*, the defendant was held liable for child support notwithstanding the fact that DNA tests showed he was not the father of one of the plaintiff's children. However, the defendant's liability was based on the fact that he voluntarily agreed to support the child *with full knowledge* that he was not the father. Id. at 520. If, as he contends, Smith was unaware that he was not the child's father at the time he agreed to pay support, the promissory estoppel principles relied upon in *Wright* would not be applicable.

In its order, the court noted that Smith failed to obtain a court order for the blood test and therefore, such evidence could not be considered. The trial court erred in holding that such evidence, which is otherwise admissible, is rendered inadmissible because its procurement was not ordered by the court. This fact does not render the results of the blood test inadmissible. OCGA § 19-7-46 allows admission of the results of court-ordered blood tests "without the need for foundation testimony or other proof of authenticity or accuracy." The statute does not, however, preclude the admission of test results not ordered by the court, if a proper foundation is laid for admission.

3. The DHR also contends that Smith's application for discretionary appeal was untimely because it was erroneously filed with the Supreme Court, which then transferred the application to this Court. OCGA § 5-6-37, dealing with the filing of notices of appeal, provides that an appeal shall not be dismissed or denied consideration

---

dence, holding that the purported father did not show that want of due diligence was not the reason the new evidence was not acquired sooner. Although the Court noted that the father did not take advantage of the statute authorizing the use of blood tests, it also relied on other facts, including the fact that the mother was pregnant at the time they were married, and that the father entered into a separation agreement and divorce decree acknowledging the child as his. *Roddenberry,* supra at 717. There is no indication that the parties were living together at the time the child was conceived, or that the father reasonably believed he and the mother were engaged in a monogamous relationship at the time. Thus, while failure to require a paternity test is one factor that should be considered in evaluating a party's diligence, it is not the only factor.

because of a designation of the wrong appellate court. Although OCGA § 5-6-35, dealing with applications for discretionary appeals, does not contain this language, dismissal is not mandated when an application is filed in the wrong appellate court.

Supreme Court Rule 34 provides that "[d]iscretionary applications to appeal of which the Court of Appeals has jurisdiction may be transferred to that Court or may be dismissed for improper filing." As the Supreme Court elected to transfer the application to this Court, it is appropriate that we grant the application and consider the merits of this case. See *Marr v. Ga. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995) (transferring application for discretionary appeal from Supreme Court to Court of Appeals); see also OCGA § 5-6-30 (appeal statute should be construed so as to "avoid dismissal of any case or refusal to consider any points raised therein").

Accordingly, the order of the superior court is reversed and this case is remanded for proceedings consistent with this opinion.

*Judgment reversed. Pope, P. J., and Johnson, J., concur.*

DECIDED MAY 16, 1997 — 
 Before Judge Wofford.
*Jeffrey H. Fonseca, Tracey-Anne Napolitano*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Kevin M. O'Connor, Assistant Attorney General*, for appellee.