A97A1500. SIMPSON CONSULTING, INC. et al. v. BARCLAYS BANK PLC.
(490 SE2d 184)

ELDRIDGE, Judge.

Appellee, Barclays Bank PLC d/b/a Barclays Wholesale Consumer Services ("Barclays"), was granted summary judgment on November 27, 1996, on the multiple theories of liability set forth in the permissive joinder of claims and parties in a complaint by each of the appellants, Simpson Consulting, Inc.; Link Financial Consulting, Inc.; Financial Software Consultants; Comoro Services, Inc.; Monkiewicz Services, Inc.; Logan Computer Associates, Inc.; Datagen, Inc.; SDF & Associates, Inc.; Goforth Consulting, Inc.; Bandy Consulting, Inc.; North East Software Solutions, Inc.; and JHR Consultants, Inc.; each of which had separate and independent claims that

were virtually identical except as to the individual damages. Appellants timely filed its notice of appeal, as amended.

The complaint asserts the following theories of liability: (1) fraud; (2) breach of contract (written/oral); (3) federal RICO; (4) Georgia RICO; (5) promissory estoppel; and (6) third-party beneficiary liability.

The complaint fails to set forth the circumstances constituting fraud, which "shall be stated with particularity." OCGA § 9-11-9 (b). Appellants contend that statements made by appellee's agents to independent contractors working as its purchasing agents were relied upon by each of the appellants to its detriment and were false, although such statements were never made directly to any appellant or in its presence. None of the appellants entered into written contracts with appellee, even though the work was to be performed over more than 12 months; the parties made no oral contract. However, appellants contend that their agreement was binding, notwithstanding the lack of specificity, definiteness, or formality, due to custom and practice in the trade.

Appellants each entered into separate independent contractor agreements and confidentiality agreements, not with Barclays, but with independent contractors, Scott International Banc Systems, Inc. ("SIBS") and Manley & Associates, Inc. ("M & A"). Barclays had a contract with M & A but not with SIBS; M & A subcontracted such work with SIBS. Patrick E. Manley ("Manley") was president of M & A as well as an officer and shareholder of SIBS. Eric Scott ("Scott") was a vice president of Barclays as well as owner and president of SIBS; Barclays' management and Scott's superiors were unaware of the existence of SIBS; that Scott was president of SIBS; or that SIBS had a contract with M & A to do Barclays work. Such dealings between M & A and SIBS, and Scott's secret relationship and business with each while employed by Barclays, violated Barclays' employment and operations policies. Manley, on behalf of M & A, paid to Scott substantial sums, $15,000 and $60,000, which Scott deposited into his checking account.

Although Scott insisted that each appellant become a separate corporate entity and appellants as corporate entities dealt solely with the independent contractors, M & A and SIBS at all times and never with appellee, appellants assert that each appellant has a direct action against appellee.

Each appellant asserted special damages for unpaid work performed. Appellants also assert that each is entitled to damages for holding itself available for possible future work, but do not state with enforceable particularity the terms, rates, and conditions for such future work. Appellants invoiced the independent contractors for the work done and received checks drawn on the account of SIBS for the

invoiced amounts. The checks that appellants received from SIBS were returned for insufficient funds.

Appellants' only enumeration of error is that the trial court erred in granting summary judgment because material issues of fact as to each theory of liability exist for jury determination. We do not agree.

In the case sub judice, appellee's motion for summary judgment pierced appellants' pleadings on at least one essential element of each theory of liability, thereby requiring appellants to come forward with evidence to create material issues of fact. It must also be remembered that appellants have separate and individual causes of action that may be similar, or even identical, but not a common cause of action or a class action; thus, each appellant as to their respective claim, although treated collectively, must individually show that there exist material issues of fact as to their claim. Appellants collectively and individually have failed to meet this shifted burden of proof. *Lau's Corp. v. Haskins*, 261 Ga. 491, 493-494 (2) (405 SE2d 474) (1991).

1. Fraud.

OCGA § 51-6-1 codifies an action for common law fraud. The essential elements of fraud and deceit are that: (1) the defendant made the representation; (2) at the time he made the representation, he knew that the representation was false; (3) he made the representation with the intention and purpose of deceiving the plaintiff; (4) the plaintiff reasonably relied upon such representation; and (5) the plaintiff sustained loss and damages as the proximate result of the representation. *Eckerd's Columbia v. Moore*, 155 Ga. App. 4 (270 SE2d 249) (1980); *Tolar Constr. Co. v. GAF Corp.*, 154 Ga. App. 127 (267 SE2d 635) (1980) rev'd on other grounds, 246 Ga. 411 (271 SE2d 811) (1980); *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727 (16 SE2d 176) (1941).

If there is a promise made without mutuality of obligation so that the promise is not enforceable as a contract, then the failure to perform is not actionable as fraud; further, mere breach of contract is not fraud. *Williams v. Southland Corp.*, 143 Ga. App. 111, 113 (1) (237 SE2d 639) (1977); *Kinard Realty v. Evans*, 152 Ga. App. 813, 814 (2) (264 SE2d 282) (1979); *Ely v. Stratoflex, Inc.*, 132 Ga. App. 569, 571-572 (2) (208 SE2d 583) (1974); *Bullard v. Western Waterproofing Co.*, 63 Ga. App. 547, 548-549 (1) (11 SE2d 713) (1940); *Tallent v. Scarratt*, 51 Ga. App. 577 (181 SE 141) (1935). Mere speculation or puffing as to a future performance is not a material misrepresentation of fact that is actionable as fraud. *Vaughan v. Oxenborg*, 105 Ga. App. 295, 299-300 (1) (124 SE2d 436) (1962). Statements of opinion are not such factual representations that are actionable as fraud. *Buckner v. Mallett*, 245 Ga. 245, 246 (1) (264 SE2d 182) (1980); *Puck-*

*ett Paving Co. v. Carrier Leasing Corp.*, 236 Ga. 891, 892 (225 SE2d 910) (1976); *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966-968 (4) (214 SE2d 360) (1975); *U-Haul Co. of Western Ga. v. Dillard Paper Co.*, 169 Ga. App. 280, 281 (312 SE2d 618) (1983). A promise to perform some future act is not fraud unless made with the present intent not to perform or with a present knowledge that the future event will not take place. *Craft v. Drake*, 244 Ga. 406, 408 (260 SE2d 475) (1979); *Clare Dev. Corp. v. First Nat. Bank of Columbus*, 243 Ga. 709 (256 SE2d 452) (1979); *First Nat. Bank &c. v. Thompson*, 240 Ga. 494, 495 (241 SE2d 253) (1978); *Hayes v. Hallmark Apts.*, 232 Ga. 307, 308-309 (1) (207 SE2d 197) (1974); *Ga. Real Estate Comm. v. James*, 152 Ga. App. 193, 195-196 (262 SE2d 531) (1979).

In the case sub judice, construing appellants' allegations of fraud most favorably, there exists no representation made directly to an appellant that was false and that was made with the intent to deceive the appellant into relying upon the representation to appellants' detriment. All that exists in the case sub judice is a business proposal that fell apart prior to it becoming formalized into a legally binding contract.

Appellants misplace reliance upon *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983) and *Southeast Consultants v. O'Pry*, 199 Ga. App. 125 (404 SE2d 299) (1991), which are distinguishable on both the law and facts from the case sub judice. Factually in these cases, the tortfeasors prepared written documents as professionals, providing expert opinion and services for a fee, which documents contained erroneous, mistaken, or misleading statements of fact. The tortfeasors negligently gave such documents to another with the full expectation that such documents, unchanged, would be given to and relied upon by the plaintiffs. Liability was premised, not on scienter, but upon negligence in making the representations relied upon as experts upon whom it is reasonably expected that others will rely. "Under this standard [Restatement, Torts Second, § 552], one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. . . . If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach." *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, supra at 681-682.

The foregoing cases are a hybrid "fraud" action, based upon pro-

fessional negligence, not scienter. Such standard applies under very limited factual circumstances that would give a right of action for professional malpractice, but for the absence of "privity." In the case sub judice, appellee was neither a professional paid to render the oral statement nor was the statement anything other than future expectations, intentions, or opinions as to future circumstances. Therefore, the case sub judice does not come within the ambit of such case law either legally or factually. See *Badische Corp. v. Caylor*, 257 Ga. 131, 132 (356 SE2d 198) (1987); *First Nat. Bank of Newton County v. Sparkmon*, 212 Ga. App. 558, 559 (442 SE2d 804) (1994). Appellants have failed, upon the shifting of the burden of proof on summary judgment after appellee pierced the pleadings, to come forward with evidence to create a material issue of fact.

2. (a) Breach of Contract — Written.

A written contract must either be an agreement executed by both parties or a series of writings which have been signed by both parties and which show an offer, acceptance, and mutually binding promises as consideration and contain the necessary terms of the contract. OCGA § 13-3-1; *Bd. of Regents v. Tyson*, 261 Ga. 368 (404 SE2d 557) (1991); *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460 (314 SE2d 874) (1984); *Cassville-White Assoc. v. Bartow Assoc.*, 150 Ga. App. 561, 564 (4) (258 SE2d 175) (1979). The terms of the contract must be agreed upon unconditionally and be sufficiently definite or ascertainable for enforcement, or the purported agreement has no enforceability as a binding agreement. *Green v. Johnston Realty*, 212 Ga. App. 656, 658-659 (1) (442 SE2d 843) (1994); *Lamb v. Decatur Fed. &c. Assn.*, 201 Ga. App. 583, 585-586 (1) (411 SE2d 527) (1991); *Panfel v. Boyd*, 187 Ga. App. 639, 645-646 (3) (371 SE2d 222) (1988); *Farmer v. Argenta*, 174 Ga. App. 682, 683-684 (331 SE2d 60) (1985). There exists no written contracts signed by each individual appellant and by the appellee; nor does any series of writings signed and agreed upon by appellee and by each individual appellant exist. There is a failure of proof that a written contract exists between the parties.

(b) Breach of Contract — Oral.

Under OCGA § 13-5-30 (5), a contract that will take longer than one year to perform must be in writing; the alleged oral contract for services to begin in the future and to continue for more than one year comes within the statute of frauds and is void. *Katz v. Custom Spray Prods.*, 168 Ga. App. 451, 452 (309 SE2d 663) (1983); *Lewis v. Southern Realty Invest. Corp.*, 42 Ga. App. 171 (1), (2) (155 SE 369) (1930). However, if the alleged oral employment contract is for an indefinite period, which could be less than one year, and terminable at will by either party at any time, then such oral contract would not come within the statute of frauds, but is terminable at will, giving no right

of action for future loss of employment or future benefits. See *Vitner v. Funk*, 182 Ga. App. 39, 42-43 (2) (354 SE2d 666) (1987); *Wood v. Dan P. Holl & Co.*, 169 Ga. App. 839 (315 SE2d 51) (1984); *Brazzeal v. Commercial Cas. Ins. Co.*, 51 Ga. App. 471 (180 SE 853) (1935).

The alleged agreements fail to become binding contracts because of the uncertainty and lack of agreed upon terms. Appellants sought to create such terms by resort to prior custom; however, such prior course of dealing was with an independent contractor so that there never was a meeting of the minds between the appellants and appellee as to terms or privity. See *Liberty Nat. Bank &c. Co. v. Diamond*, 229 Ga. 677, 680 (1) (194 SE2d 91) (1972); *Associated Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 491 (2) (37 SE2d 393) (1946); *Hartrampf v. Citizens & Southern &c.*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981); *Wells v. H. W. Lay & Co.*, 78 Ga. App. 364, 367-368 (1), (2) (50 SE2d 755) (1948). Therefore, the trial court did not err in finding that there was no enforceable contract and granting summary judgment on such theory of liability.

3. Federal RICO.

The Organized Crime Act of October 15, 1970, P. L. 91-452, Title IX, § 904, 84 Stat. 947, created the Racketeer Influenced & Corrupt Organizations Act (RICO), 18 USCS §§ 1961-1968. Concurrent jurisdiction exists for a federal RICO action to be brought in a state court. See *Tafflin v. Levitt*, 493 U. S. 455 (110 SC 792, 107 LE2d 887) (1990). For liability on an action under federal RICO, the plaintiff must prove criminal liability on the part of the defendant which caused damages to the plaintiff. See *Sedima, S. P. R. L. v. Imrex Co.*, 473 U. S. 479, 488-493 (105 SC 3275, 87 LE2d 346) (1985); *Taffet v. Southern Co.*, 967 F2d 1483, 1486-1487 (11th Cir. 1992).

In the case sub judice, appellants have failed to come forward with proof that shows the required predicate acts and the pattern of criminal conduct. Appellants contend that there was common law fraud, mail fraud, and wire fraud as predicate acts. The common law fraud was disposed of in Division 1, supra. Wire and mail fraud are similar in their essential elements, and these crimes differ from common law fraud in that there is no necessity of reliance. The common elements of each are that: (1) the defendant either directly, or as an accessory must have a scheme or artifice to defraud; (2) the defendant, or an associate within the scheme, used the wire or mail or caused the wire or mail to be used; and (3) the purpose of using the wire or mail was to execute the scheme or in furtherance of the scheme. *McLaughlin v. Anderson*, 962 F2d 187, 191 (2nd Cir. 1992); *Fleischhauer v. Feltner*, 879 F2d 1290, 1297-1298 (6th Cir. 1989); *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F2d 475, 480-481 (5th Cir. 1986); see also *Taffet v. Southern Co.*, supra at 1487, n. 6. Appellants have failed to make out an issue of material fact as to

each such element.

4. Georgia RICO.

The United States Supreme Court has held that the standard of proof in a category of cases "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision," so that the intermediate standard of proof, clear and convincing evidence, will be used in those cases affecting fundamental rights, stigma, and property rights. *Addington v. Texas*, 441 U. S. 418, 423 (99 SC 1804, 60 LE2d 323) (1979); see also *In the Matter of Winship*, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (1970). This intermediate standard of "clear and convincing" evidence has been applied where the consequences to the person are significant.[1] The United States Supreme Court has not decided the issue as to what standard of proof to use in federal civil RICO cases.[2] In civil forfeiture cases under RICO, the criminal standard of "beyond a reasonable doubt" has been applied.[3] Some federal courts, which does not include the Eleventh Circuit, have applied the lowest civil standard of proof, "preponderance of the evidence" in federal civil RICO cases, based upon reasoning from similar federal statutes.[4] "A RICO claim, replete with the ruinous threat of treble damages, can not be assembled by cobbling together plainly inconsistent allegations of fraud." *McLaughlin v. Anderson*, supra at 191. The

---

[1] *Santosky v. Kramer*, 455 U. S. 745 (102 SC 1388, 71 LE2d 599) (1982) (termination of parental rights); *Addington v. Texas*, supra at 423 (civil commitment); *Woodby v. INS*, 385 U. S. 276 (87 SC 482, 17 LE2d 362) (1966) (deportation); *Chaunt v. United States*, 364 U. S. 350 (81 SC 147, 5 LE2d 120) (1960) (denaturalization).

[2] In *Sedima, S. P. R. L. v. Imrex Co.*, supra at 491, the Court indicated that a civil, rather than the criminal, standard of proof would be appropriate, and probably the preponderance of the evidence standard. But this opinion did not decide whether to use the "preponderance of evidence" or "clear and convincing" evidence as the appropriate standard.

[3] *United States v. Ragonese*, 607 FSupp. 649, 650-651 (S.D. Fla. 1985), aff'd without opinion, 784 F2d 403 (11th Cir. 1986); *United States v. Horak*, 633 FSupp. 190, 199-200 (N.D. Ill. 1986), aff'd in part and vacated in part on other grounds, 833 F2d 1235, 1241-1242 (7th Cir. 1987).

[4] *Liquid Air Corp. v. Rogers*, 834 F2d 1297, 1302-1303 (7th Cir. 1987); *Fleischhauer v. Feltner*, supra; *Wilcox v. First Interstate Bank of Oregon*, 815 F2d 522 (9th Cir. 1987); *Cullen v. Margiotta*, 811 F2d 698, 731 (2nd Cir. 1987); *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, supra at 480-481; *United States v. Local 560 of the Intl. Brotherhood &c.*, 780 F2d 267, 279-281 (3rd Cir. 1985); *United States v. Cappetto*, 502 F2d 1351, 1357 (7th Cir. 1974). The reasoning was that the RICO Act borrowed language from the Clayton Act, which also imposes triple damages and which applies a preponderance of the evidence standard. However, in regard to a different issue under RICO, the United States Supreme Court held that the use of language from the Clayton Act did not import into RICO all the baggage of interpretation of the Clayton Act. *Tafflin v. Levitt*, supra. A second rationale was that, at common law, fraud required the standard of proof of "clear and convincing" evidence, but the Supreme Court had not followed such intermediate standard in security fraud cases under the Securities & Exchange Act of 1934, § 10 (b). *Herman & MacLean v. Huddleston*, 459 U. S. 375 (103 SC 683, 74 LE2d 548) (1983); see *Liquid Air Corp. v. Rogers*, supra at 1303; *United States v. Local 560 of the Intl. Brotherhood &c.*, supra at 279, n. 12.

United States Supreme Court, when it was called upon to decide whether punitive damages violated due process, considered but did not decide whether or not the standard of proof for imposition of punitive damages should be "clear and convincing" evidence, but held that other procedural safeguards were adequate to protect the person.[5] Thus, the United States Supreme Court and the Eleventh Circuit have not determined which civil standard of proof to apply in federal civil RICO. Generally, Georgia courts follow federal decisions interpreting RICO. See *Stanton v. Shearson Lehman/American Express,* 622 FSupp. 293 (N.D. Ga. 1985). However, the federal and Georgia RICO acts are not identical; the Georgia RICO is both broader in parts and narrower in parts. Where the public policy of Georgia differs, Georgia courts will not follow federal precedent, because Georgia courts are free to afford its residents greater protection than that given by the federal courts. *Chancey v. State,* 256 Ga. 415, 418 (349 SE2d 746) (1986).

The General Assembly, in passing Ga. L. 1980, p. 405, § 1 et seq., OCGA § 16-14-1 et seq. did not specify the standard of proof in a civil RICO action under OCGA § 16-14-6 (c). Treble damages under OCGA § 16-14-6 (c), as well as punitive damages and attorney fees, would constitute a severe economic sanction of a penal nature upon any RICO defendant and would attach a stigma of quasi-criminal liability.

In passing Ga. L. 1987, p. 915, § 5, OCGA § 51-12-5.1 (b) and (c), dealing with punitive damages, the General Assembly expressed Georgia's public policy that punitive damages in instances involving aggravating circumstances, i.e., intentional torts or entire want of care, which would raise the presumption of conscious indifference to the consequences, are to be proven by the standard of proof of "clear and convincing" evidence in order to penalize, punish, or deter such tortious conduct. *Mack Trucks v. Conkle,* 263 Ga. 539 (436 SE2d 635) (1993); *Clarke v. Cotton,* 263 Ga. 861 (440 SE2d 165) (1994); *Gen. Motors Corp. v. Moseley,* 213 Ga. App. 875 (447 SE2d 302) (1994). Since the intent of the General Assembly as expressed in OCGA § 16-14-2 (b) is to impose sanctions and to compensate private individuals who have been injured, then the purposes of treble damages and punitive damages are substantially the same, thereby requiring the same standard of proof, i.e., "clear and convincing" evidence. The General Assembly has imposed such intermediate standard of proof under many statutes, because of the effect of such statutes on personal or property rights, such as civil commitment, child custody and

---

[5] *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U. S. 1, 23, n. 11 (111 SC 1032, 113 LE2d 1) (1991).

adoption, termination of parental rights, and property rights.[6] When statutes failed to safeguard individual rights, either personal or property, by imposing too low a standard of proof the Supreme Court of Georgia has required that the intermediate standard, "clear and convincing evidence," be applied rather than the less protective standard of "preponderance of the evidence."[7] When a common law tort action significantly impacts upon the constitutional rights of a defendant, the courts have mandated that the standard of proof be "clear and convincing evidence." *New York Times Co. v. Sullivan*, 376 U. S. 254, 279-280 (84 SC 710, 11 LE2d 686) (1964); *Barber v. Perdue*, 194 Ga. App. 287, 288 (390 SE2d 234) (1989). Thus, under the clear public policy of Georgia the standard of proof in a civil RICO action pursuant to OCGA § 16-14-6 (c) is "clear and convincing evidence." Upon the shifting of the burden of proof on summary judgment, appellants have failed to come forward with evidence that even remotely satisfies such standard or to at least create a material issue of fact hereunder. See *Barber v. Perdue*, supra at 288.

5. Promissory Estoppel.

Ga. L. 1981, p. 876, § 2, OCGA § 13-3-44 (a), codified an equitable action for promissory estoppel. See *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 135 (7) (345 SE2d 330) (1986); *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322 (283 SE2d 262) (1981); *Pepsi Cola Bottling Co. v. First Nat. Bank of Columbus*, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981); see also *Gen. Communications Svc. v. Ga. Pub. Svc. Comm.*, 244 Ga. 855, 856 (262 SE2d 96) (1979); *Pethel v. Waters*, 220 Ga. 543, 552 (4) (140 SE2d 252) (1965). Under the Georgia action for promissory estoppel, the essential elements are that: (1) the defendant made a certain promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, forgoes, or rendered a valuable right. OCGA § 13-3-44 (a); *Pethel v. Waters*, supra at 551-552; *Gen. Communications Svc. v. Ga. Pub. Svc. Comm.*, supra at 856; *Doll v. Grand Union Co.*, 925 F2d 1363 (11th

---

[6] OCGA §§ 7-1-812; 7-1-813; 9-11-12 (b) (4), (5) and (d); 10-1-15; 10-1-787; 12-8-23.1 (a) (3) (B); 15-11-2; 15-11-18; 15-11-33; 15-11-41; 15-11-81; 15-11-86; 19-7-1; 19-7-4; 19-7-5; 19-8-10; 19-8-23; 19-9-1; 23-1-8; 24-9-47 (t) (2); 29-5-3 (a); 29-5-6 (e) (4); 29-5-8 (b) (1), (e); 29-5-11 (a); 30-5-5 (d); 37-3-64; 37-4-2 (7); 37-4-42; 37-7-1; 43-3-13; 44-5-80; 44-12-262 (a); 47-3-122; 53-1-5 (d); 53-2-3 (2) (A) (v); 53-2-4 (b) (1) (E); 53-12-92 (c); 53-12-153.

[7] See *Blackburn v. Blackburn*, 249 Ga. 689, 692 (292 SE2d 821) (1982); *In re Suggs*, 249 Ga. 365, 367 (291 SE2d 233) (1982); *Motes v. Hall County DFACS*, 251 Ga. 373, 374 (306 SE2d 260) (1983); *In re Baby Girl Eason*, 257 Ga. 292, 295 (358 SE2d 459) (1987); *In re L. H. R.*, 253 Ga. 439, 445 (321 SE2d 716) (1984); *Thorne v. Padgett*, 259 Ga. 650 (386 SE2d 155) (1989); *Brooks v. Parkerson*, 265 Ga. 189, 192 (454 SE2d 769) (1995).

Cir. 1991); *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516, 519 (4) (445 SE2d 335) (1994); *Lake Tightsqueeze v. Chrysler First Fin. Svcs. Corp.*, 210 Ga. App. 178, 180 (2) (435 SE2d 486) (1993). Since promissory estoppel is an equitable doctrine, there must be reasonable reliance on such promise. This means that the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify such reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment. *Knotts Landing Corp. v. Lathem*, 256 Ga. 321, 324 (3) (348 SE2d 651) (1986); *Pethel v. Waters*, supra at 551-552; *Doll v. Grand Union Co.*, supra at 1363; *W. R. Grace & Co.-Conn. v. Taco Tico Acquisition Corp.*, 216 Ga. App. 423, 426 (1) (454 SE2d 789) (1995); *LaVeau v. Republic Health Corp. of Central Ga.*, 181 Ga. App. 106, 109 (4) (351 SE2d 506) (1986); *Fidelity &c. Co. v. West Point Constr. Co.*, 178 Ga. App. 578, 580 (344 SE2d 268) (1986); *Atkinson v. American Agency Life Ins. Co.*, 165 Ga. App. 102, 104-105 (2) (299 SE2d 600) (1983). Plaintiff need not be in privity with the defendant for promissory estoppel to apply when (1) the assurance was made directly to the plaintiff, so that there would be no rejection by plaintiff's contractor at plaintiff's insistence; (2) the plaintiff was the third-party beneficiary of any express or implied warranty of the product, services, or work; and (3) reliance was reasonable by plaintiff and expected by the defendant. See *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828, 829-830 (3) (302 SE2d 734) (1983). Promissory estoppel may apply to an executory promise without any other consideration, because detrimental reliance supplies consideration as a matter of waiver and estoppel. Thus, if the promise is to be performed in the future and conditioned on a future event, then promissory estoppel may apply so that "performance becomes due only upon the occurrence of the condition or upon the arrival of a specified time." Restatement, Contracts, Second, § 91; *Pethel v. Waters*, supra at 552; *Kemira, Inc. v. Williams Investigative &c. Svcs.*, 215 Ga. App. 194, 199 (2) (450 SE2d 427) (1994).

While the alleged contracts were under New York law, promissory estoppel is a Georgia equity doctrine, so that Georgia case law applies as a matter of conflict of law. *Nickell v. IAG Fed. Credit Union*, supra at 519. The public policy of Georgia is expressed by OCGA § 34-7-1, which makes employment terminable at will absent a written contract for a specified time period of employment. See *Land v. Delta Air Lines*, 130 Ga. App. 231 (203 SE2d 316) (1973); see also *Barker v. CTC Sales Corp.*, 199 Ga. App. 742 (1) (406 SE2d 88) (1991). "[T]his court has held that while the principle of promissory estoppel, codified in OCGA § 13-3-44 (a), 'provides that, in certain circumstances, the reliance by the promisee or third party upon the

promise of another is sufficient consideration, in and of itself, to render the executory promise enforceable against the promisor, [cit.], this principle has no application in the instant case (where the promise relied on was for employment for an indefinite period).' *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985). Accordingly, as the promise relied on by appellant[s] was for employment for an indefinite period, the trial court did not err by refusing to recognize this 'exception' to the general rule, as urged by appellant[s]." *Barker v. CTC Sales Corp.*, supra at 743; see also *Johnson v. MARTA*, 207 Ga. App. 869, 870 (1) (429 SE2d 285) (1993). In the case sub judice, as a matter of Georgia public policy, appellants have no cause of action under the Georgia equity doctrine of promissory estoppel as to any alleged contracts terminable at will.

6. Third-Party Beneficiary.

Under OCGA § 9-2-20 (b), a third-party beneficiary to a contract may sue in his own name to enforce the contract; however, the contract must expressly specify and identify the person as a third-party beneficiary to the contract. *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978); *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370) (1976); *Stewart v. Gainesville Glass Co.*, 131 Ga. App. 747, 752-753 (206 SE2d 857) (1974), aff'd, 233 Ga. 578 (212 SE2d 377) (1975); see also *Donalson v. Coca-Cola Co.*, 164 Ga. App. 712, 713-714 (2) (298 SE2d 25) (1982).

The third-party beneficiary must be the intended beneficiary of the contract; the mere fact that a third party would benefit incidentally from the performance of the contract is not alone sufficient to give such person standing to sue on the contract. *Whitley v. Bryant*, 198 Ga. 328 (31 SE2d 701) (1944); *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347, 349 (1) (411 SE2d 75) (1991), overruled on other grounds, *Lemonds v. Walton County Hosp. Auth.*, 212 Ga. App. 369 (441 SE2d 821) (1994); *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391-392 (1) (367 SE2d 278) (1988); *Bartley v. Augusta Country Club,* 172 Ga. App. 289, 290 (322 SE2d 749) (1984); *Southeast Grading v. City of Atlanta*, 172 Ga. App. 798, 800 (1) (324 SE2d 776) (1984).

The agreement between appellee and its independent contractors was made for the benefit of the named parties and any benefit which flowed to appellants individually under such agreement was merely incidental to such agreements. Thus, appellants were not the third-party beneficiary of any agreement made by appellee.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur in judgment only.*

*Gray & Hedrick, William E. Gray II, Law Office of David W. M. Boone, Robert G. Ballard,* for appellants.

*King & Spalding, James N. Gorsline, Ralph B. Levy, Flournoy & Gentry, William C. Gentry,* for appellee.