In re Sammy A. CAVES, Debtor.

Columbus Bank & Trust Co., Movant,

v.

Sammy A. Caves, Respondent.

No. 03–41518.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

April 22, 2004.

Frank B. Wilensky, Macey, Wilensky, Cohen, et al., Atlanta, GA, for Debtor.

### MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On January 26, 2004, the Court held the final day of a multi-day hearing on the Motion of Columbus Bank & Trust Co. ("Movant") for Relief from the Automatic Stay. The main issue was whether Movant should be granted relief from the stay to pursue its state court action against Sammy A. Caves ("Respondent") and other co-defendants. At the conclusion of the hearing, the Court took the matter under advisement. The Court has considered the evidence, the parties' briefs and oral arguments, as well as applicable statutory and case law. Under the test set out in *In re South Oakes Furniture, Inc.*, 167 B.R. 307 (Bankr.M.D.Ga.1994) (Walker, J.), the Court finds that Movant is not entitled to relief from the automatic stay. *South Oakes Furniture*, 167 B.R. at 309 (citations omitted).

### THE PARTIES' CONTENTIONS

Movant contends that Respondent has not satisfied the three prongs of the test set out in *South Oakes Furniture. Id.* Movant argues that Respondent has not met his burden to prove that the continuance of the state court action will greatly prejudice either Respondent's bankruptcy estate or Respondent personally. Movant further contends Respondent failed to prove that any potential prejudice to Respondent's bankruptcy estate or Respondent, if forced to proceed in state court, would considerably outweigh the hardship to Movant, by maintenance of the stay. Finally, Movant contends that it has established "a probability of prevailing on the merits of [its] case" by showing that Respondent either knew of or had a duty to know of criminal acts Movant alleges were committed by Preferred Alliance, Inc. ("P.A.I.") and/or its agents, a corporation of which Respondent was a shareholder and director. *Id.*

Respondent contends that his bankruptcy estate and himself personally will be greatly prejudiced if the state court action is allowed to move forward. Respondent argues that he has not been able to participate in discovery or file dispositive motions, such as a motion for summary judgment, because of the automatic stay. Further, Respondent argues that if the state court proceeding is to move forward, that he will be unfairly associated with the other defendants. If Respondent should lose in the state court proceeding, collateral estoppel may prevent the Bankruptcy Court from deciding the issue of dischargeability of the debt. Additionally, judicial economy calls for the consolidation of the action in Bankruptcy Court. As to the second prong of the test in *South Oakes Furniture*, Respondent argues that the prejudice to Respondent, if the state court action moves forward, considerably outweighs any hardship to Movant, if

forced to move forward in Bankruptcy Court. *Id.*

Finally, Respondent argues that Movant has not established "a probability of prevailing on the merits of [its] case" because Movant has not proven by clear and convincing evidence, as required by Georgia's Racketeer Influenced and Corrupt Organizations ("R.I.C.O.") law, that Respondent is guilty of R.I.C.O. violations. O.C.G.A. §§ 16–14–1 through 16–14–15 (2003); *South Oakes Furniture,* 167 B.R. at 309 (citations omitted); *see Simpson Consulting, Inc. v. Barclays Bank PLC,* 227 Ga. App. 648, 654, 490 S.E.2d 184, 190–191 (1997). Respondent argues Movant has proven, at most, that Respondent was not a very attentive investor and director. Respondent urges that this does not meet the higher standard required to find Respondent guilty of criminal conduct, which is required by Georgia's R.I.C.O. law. *See Avery v. Chrysler Motors Corp.,* 214 Ga. App. 602, 604, 448 S.E.2d 737, 739 (1994).

## FINDINGS OF FACT

While the facts are contested, from depositions, the Court was able to discern a timeline of events that led to Movant's Motion for Relief from the Automatic Stay. Prior to August 2000, Respondent became aware of P.A.I. through an acquaintance of his, Dr. Murray Newlin. Respondent testified at his deposition that about a year after he had heard of P.A.I., but with no investigation into P.A.I. or its business operations, he invested in the company.

Respondent admits that he knew very little about P.A.I.'s business practices. Respondent understood that P.A.I. sold discounted services marketed through independent contractors. It was Respondent's understanding that there was money to be made through renewals of the discounted service packages. Respondent was aware that P.A.I. sold discounted

healthcare service and vacation packages. Respondent admits he knew that approximately one-third of P.A.I.'s customers would request refunds. However, Respondent contends his understanding was that this level of requests for refunds was typical in telemarketing operations. Respondent admits to participating in telephone conferences regarding sales figures but stated in his deposition that he knew little about P.A.I.'s day-to-day operations.

Respondent's initial investment was approximately $50,000 to $100,000, after which he owned approximately 5–8% of the company. After later investments, Respondent owned approximately 16–17% of the company. In total, Respondent invested approximately $400,000 in P.A.I. This amount excludes a $200,000 transaction that is characterized by Respondent as a transaction for tax purposes, completed at the suggestion of Respondent's accountant.

In August 2000, Respondent held a P.A.I. Shareholders' Meeting at his home. While Respondent is not sure when, he was appointed as a director of P.A.I. During the summer or fall of 2000, a line-of-credit was established for P.A.I. at SunTrust Bank ("SunTrust"). Eventually, Dr. Newlin and Respondent assumed liability on the SunTrust line-of-credit. Of money paid by Respondent towards the SunTrust line-of-credit, P.A.I. re-paid Respondent $50,000, after P.A.I. began doing business with Movant.

In March 2001, P.A.I. set up a merchant account with Movant, so that P.A.I. could process credit card transactions. On May 23, 2001, Respondent signed a personal guaranty on the merchant account. In August 2001, Respondent held a second Shareholders' Meeting at his home. Also in August 2001, Movant asked to speak with Respondent regarding charge-back requests on P.A.I.'s merchant account. Movant contends that Respondent told Dr.

Newlin to tell Movant to deal directly with P.A.I., not with Respondent, regarding the charge-back issue. Respondent does not deny this because at the time he felt that he did not know enough about P.A.I. to discuss financial matters with Movant. In middle to late 2001, Respondent visited a P.A.I. call center in Connecticut which primarily dealt with customers' requests for charge-backs and membership terminations. During that visit, Respondent observed call center employees dealing with customers over the phone.

In December 2001, Respondent put $200,000 into a P.A.I. account at SunTrust. In January 2002, the money was removed from the P.A.I. account and returned to Respondent. As stated previously, Respondent characterized this transaction as one for tax purposes. Also in January 2002, Respondent attended two meetings with Movant regarding the high number of chargeback requests Movant was getting on P.A.I.'s merchant account. After the meetings, Movant discontinued processing credit card transactions for P.A.I. Some time after Movant discontinued processing P.A.I.'s credit card transactions, Respondent resigned as a director of P.A.I. Movant contends that Respondent knew of alleged fraudulent and criminal actions taken by P.A.I.'s agents and employees. However, Movant failed to submit any admissible evidence to contradict Respondent's deposition testimony that he was unaware of P.A.I.'s day-to-day operations and that, if any fraudulent or criminal activity occurred at P.A.I., he was unaware of it.

In March 2002, Movant initiated a lawsuit in Muscogee County Superior Court against Respondent and other co-defendants, based on contract claims and Georgia R.I.C.O. violations. During the pendency of the state court action, but prior to the commencement of Respondent's bankruptcy proceeding, the trial court ruled in favor of Movant on the contract claims on a motion for partial summary judgment. Respondent filed an appeal of the decision prior to filing for bankruptcy protection. The State of Georgia, at some point, intervened in the state court proceeding, but has since settled its dispute with Respondent.

Respondent filed a Chapter 11 bankruptcy proceeding under title 11 of the United States Code ("Code") on June 17, 2003. 11 U.S.C. §§ 1101 through 1174 (1993 & Supp.2003). Movant received relief from the automatic stay on July 18, 2003, for the limited purpose of completing the appeals process. Prior to the Georgia Court of Appeals' decision on the contract issues, Movant filed its Motion for Relief from the Automatic Stay to pursue its Georgia R.I.C.O. claims. The Georgia Court of Appeals later affirmed in part and reversed in part the decision of the trial court on the contract issues. The Georgia Court of Appeals decision was rendered after the first hearing date on Movant's Motion for Relief from the Automatic Stay, September 19, 2003, but before the continued hearing date, January 26, 2004. The result is that some of the contract claims are still at issue.

### CONCLUSIONS OF LAW

As the Court stated in *Scott v. Williams (In re Williams)*, 302 B.R. 923 (Bankr.M.D.Ga.2003) (Laney, J.), the party opposing a motion for relief from the automatic stay bears the burden of persuasion on all issues except as to equity. *Williams*, 302 B.R. at 926; *see also* 11 U.S.C. § 362(g) (1993 & Supp.2003). However, implicit in this statement is that Movant must first make a prima facia showing that it is entitled to the relief requested. *See generally, Overhead Door Corp, v. Allstar Bldg. Prod., Inc. (In re*

*Allstar Bldg. Prod., Inc.)*, 834 F.2d 898, 900 (11th Cir.1987). The Court finds that Movant met this initial burden.

■ The burden falls on Respondent to rebut the showing made by Movant. As both parties are aware, this Court has adopted the test in *South Oakes Furniture* as the test to apply in situations where a movant requests relief from the automatic stay to move forward with a state court proceeding. *South Oakes Furniture*, 167 B.R. at 309 (citations omitted); *see Williams*, 302 B.R. at 926. "The test developed by courts to determine if it is appropriate to lift the automatic stay and allow the continuation of [a] lawsuit pending in state court is whether: a) Any 'great prejudice' to either the bankrupt estate or the debtor will result from continuation of a civil suit, b) the hardship to the [non-debtor party] by maintenance of the stay considerably outweighs the hardship to the debtor, and c) the creditor has a probability of prevailing on the merits of his case." *South Oakes Furniture*, 167 B.R. at 309 (citations omitted).

■ It is evident to the Court that there would be prejudice to Respondent and his bankruptcy estate if the automatic stay is lifted and the state court proceeding goes forward. However, it is also clear to the Court that Movant would suffer a hardship if the automatic stay is not lifted and it is forced to proceed in this Court with its action against Respondent. On balance, these two factors cancel each other out. The Court will focus on the third prong of the test, as did the parties in their briefs and oral arguments. *Id.*

The third prong of the test requires Respondent to prove that Movant does not have a probability of prevailing on the merits of the underlying case. *Id.* Respondent argues that Movant must have a higher likelihood of prevailing on the merits of its case than a probability because

the underlying Georgia R.I.C.O. action requires clear and convincing evidence of R.I.C.O. violations before Movant would be able to recover at the state level. *See Simpson Consulting*, 227 Ga.App. at 654, 490 S.E.2d at 190–191. The Court agrees with Respondent that the underlying Georgia R.I.C.O. action requires the higher clear and convincing evidentiary standard. *See id.* However, the Court has found no authority that the there is a burden on Movant to show a substantial likelihood of prevailing on the merits of its case, as Respondent urges.

The higher evidentiary standard of the underlying Georgia R.I.C.O. action was not considered by the Court in the initial hearing. Movant responded at the continued hearing and in its reply brief by arguing that Respondent either knew of alleged criminal activity being conducted at P.A.I. or, as a director of P.A.I., Respondent is charged with knowledge of such activities. Therefore, Movant argues that Respondent would be guilty of Georgia R.I.C.O. violations under conspiracy or enterprise liability because of his status as a shareholder and director of P.A.I. However, Movant did not submit case law which would persuade the Court to come to that same conclusion.

■ On balance, the Court finds that Movant does not have a probability of prevailing by proving, by clear and convincing evidence, that Respondent committed the alleged Georgia R.I.C.O. violations. *See id.* The Court must be careful to not a make a decision on the merits. This is, after all, a motion for relief from the automatic stay, not an adversary proceeding to determine the ultimate issue involved in the pending litigation. However, the Court must review the facts to determine if they show a probability of Movant prevailing on the merits of its case. *See*

*South Oakes Furniture*, 167 B.R. at 309 (citations omitted). The Court finds that the evidence does not show that Movant has a probability of prevailing on the merits of the underlying Georgia R.I.C.O. claims. Therefore, Movant's Motion for Relief from the Automatic Stay is denied as to the Georgia R.I.C.O. claims.

This ruling should not be construed to be determinative of the ultimate issue in the pending litigation. After a dispositive motion or full trial, in the Bankruptcy Court, the Court could rule in favor of either party. This ruling should only be construed to indicate that Respondent, as the party opposed to relief from the automatic stay, met its burden, not that the Court has ruled in favor of Respondent as to the merits of the underlying Georgia R.I.C.O. action.

Since the Court is denying Movant's request for relief from the automatic stay as to the Georgia R.I.C.O. claims, the Court will also deny relief from the automatic stay as to the contract claims. The remaining issues regarding the contract claims can be resolved through the claims objection process in the Bankruptcy Court.

An order in accordance with this Memorandum Opinion will be entered.