## 57777. AMERICAN STANDARD, INC. et al. v. JESSEE.

CARLEY, Judge.

Jessee, plaintiff below, was terminated from his employment with the corporate defendant, American Standard. He instituted suit, the allegations being that his termination was without cause and resulted from a malicious conspiracy on the part of co-defendants Stankis and Swanson. The defendants answered and, after discovery, moved for summary judgment. Jessee filed no specific response to this motion; he did, however, file a verified amendment to his complaint. This amendment alleged, inter alia, that he had a lifetime employment contract or that, if he did not have such a contract, he had been defrauded by the defendants. The motion for summary judgment was heard and denied as to all defendants. The order denying the motion was, however, certified by the trial court for immediate review and this court granted defendants' application for interlocutory appeal. Upon consideration of the issues raised on this appeal, we affirm as to Stankis and Swanson but reverse the trial court's order refusing to grant summary judgment in favor of American Standard.

1. Plaintiff's complaint is replete with references to "his tenured position" with American Standard, "permanent job . . . until his death, disability or retirement," "permanent, full-time salaried employee . . . for his life," "tenured employee status," "lifetime employment contract." The law is well settled that "*in the absence of a controlling contract,* 'permanent employment,' 'employment for life,' 'employment until retirement' is employment for an indefinite period, terminable at the will of either party, which gives rise to no cause of action against the employer for alleged wrongful termination. [Cit.]" *Ga. Power Co. v. Busbin,* 242 Ga. 612, 613 (250 SE2d 442) (1978) (Emphasis supplied.) Such a contract must be in writing. "To make the following obligations binding on the promissor, the promise must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, viz: Any agreement (except contracts with

overseers) that is not to be performed within one year from the making thereof." Code Ann. § 20-401 (5).

The defendants' affidavit, submitted in support of the motion for summary judgment, stated that the plaintiff was hired pursuant to an oral and not a written contract. Plaintiff concedes that there is no one written document embodying all of the terms of his contract of employment but argues that various documents, taken as a whole, set forth such a "controlling contract." Under certain circumstances a signed series of writings internally connected one with another which shows or admits an agreement coextensive with the stipulations of the alleged contract will take the promise out of the Statute of Frauds, as against the party so signing. *Capital City Brick Co. v. Atlanta Ice &c. Co.,* 5 Ga. App. 436 (1a) (63 SE 562) (1909). See also *Freeman v. Baker,* 147 Ga. App. 168 (248 SE2d 298) (1978). "The writing or memorandum of the contract, to meet the requirements of the statute of frauds, must be complete in itself, with nothing left in parol. [Cit.] It must show all the terms of the contract, the parties, and their assent thereto, in addition to showing the fact that there was a contract between the parties. [Cits.]" *Cofer v. Wofford Oil Co.,* 85 Ga. App. 444, 449 (69 SE2d 674) (1952). The "documents" referred to by plaintiff are, however, merely in-house corporate papers which establish plaintiff's *status* as a "permanent full-time" employee (as opposed to a "temporary full-time" employee) and a "bona fide Executive" employee with certain benefits which result from that status; they do not establish the period of time plaintiff is to retain this status or any other status with the employer. Where an employee brings suit against the employer for damages for his discharge prior to the expiration of the term, in the instant case prior to "death, disability or retirement," the date of the expiration of the term is one of the essential elements of the contract. Plaintiff's "documents" do not supply this contractual element. *Morris v. Virginia-Carolina Chemical Corp.,* 48 Ga. App. 702 (3) (173 SE 486) (1934). In other words, plaintiff's allegations and his "documents" do not establish a controlling *contract* for lifetime employment. See generally *Land v. Delta Air Lines,* 130 Ga. App. 231 (203 SE2d 316) (1973).

Plaintiff alleges further that various actions taken by him were in part performance of his "lifetime" contract of employment and that the Statute of Frauds does not apply. This argument has been rejected, "for even if we concluded that there had been part performance and that the Statute of Frauds does not apply, the contract is nevertheless for an indefinite hiring and for that reason is unenforceable." *Ely v. Stratoflex,* 132 Ga. App. 569, 571 (208 SE2d 583) (1974).

Plaintiff urges in the alternative that a year-to-year contract of employment was created. However, when asked whether he had signed a contract when be became a foreman, plaintiff replied, "Not to my knowledge. I don't recall." He relies upon Code Ann. § 66-101: "That wages are payable at a stipulated period raises the presumption that the hiring is for such period." In support of this argument he directs us to "documents" which refer to his "annual" salary. It is clear, however, that these documents do not stipulate the *periods* when these annual wages are payable to him but merely establish the *total* amount of his salary during a twelve-month period. Thus, there is no presumption under Code Ann. § 66-101 that the plaintiff was hired on a yearly basis. Furthermore, even if this series of documents by which the calculation of plaintiff's salary was changed from an hourly to an annual basis could be construed as a contract for employment for a period of twelve months, a year-to-year contract automatically renewable on the anniversary date would not result. See generally *Odom v. Bush,* 125 Ga. 184 (1, 2) (53 SE 1013) (1906). See also *Runyan v. Economics Laboratory, Inc.,* 147 Ga. App. 53, 54 (1) (248 SE2d 44) (1978).

It is thus clear that plaintiff's "contract" of employment was for an indefinite period, terminable at the will of either party and that there is no cause of action for an alleged wrongful termination of his "lifetime" contract. Summary judgment should have been granted in favor of American Standard as to this theory of recovery.

2. Nor does plaintiff's allegation that if he did not have a lifetime employment contract, he was, "defrauded," state a claim for relief. It is well settled that

"[a]lthough fraud can be predicated on a misrepresentation as to a future event where the defendant knows the future event will not take place . . . fraud cannot be predicated on a promise which is unenforceable at the time it is made." *Beasley v. Ponder,* 143 Ga. App. 810 (240 SE2d 111) (1977). And this is controlling in the instant case "because the promises [of lifetime employment] upon which the promisee relies for establishing fraud were unenforceable even absent any fraud at the time of their utterance. The oral promises could not be enforced because the underlying employment contract, being terminable at will, is unenforceable." *Ely v. Stratoflex,* 132 Ga. App. at 572, supra.

3. Even though a person's employment contract is at will, he has a valuable contract right which may not be lawfully interfered with by a third person. *Ott v. Gandy,* 66 Ga. App. 684 (1) (19 SE2d 180) (1942). A party with no authority to discharge an employee at will, being activated by an unlawful scheme or purpose to injure and damage him, may not maliciously and unlawfully persuade the employer to breach the contract with the employee. *Campbell v. Carroll,* 121 Ga. App. 497, 499 (174 SE2d 375) (1970). Plaintiff has alleged "a malicious conspiracy on the part of defendants Stankis and Swanson . . . in that defendants feared that plaintiff was becoming totally and permanently disabled from performing his work due to lead-poisoning contracted at said defendants' place of employment, and defendants acting in concert, discharged him, in an attempt to be relieved from the consequences of paying directly or indirectly to plaintiff his salary while he was disabled from working because of job-related health conditions."

It is urged that the pleadings have been pierced in this regard and that summary judgment should have been granted to defendants Stankis and Swanson. We disagree. The affidavit of Stankis stated "As Plant Manager deponent has general supervision of all personnel working for the American Bank Stationery Company in said Plant and has authority to discharge such personnel." The affidavit does not state, however, that Stankis had *absolute* authority to discharge Jessee without consulting with his superiors. This omission is

relevant because "if [Stankis] had the absolute right to discharge [Jessee] without consulting his superiors, he could not be liable to [Jessee] for wrongful discharge, regardless of his motives [Cit.]; whereas, on the other hand, if [Stankis] lacked such authority, he could be determined to be a 'third person' tortfeasor who could be liable to [Jessee] in an action for wrongfully procuring [Jessee's] discharge. [Cit.]" *Ga. Power Co. v. Busbin,* 242 Ga. at 613, supra.

Furthermore, as in *Busbin,* the evidence is in conflict on the question of whether Stankis had authority to discharge Jessee without the concurrence of his superiors. The record contains a document entitled "Personnel Actions — All Employees" describing a company policy which applies to all company-initiated personnel actions concerning employees. That policy includes a requirement that "[a]ll company initiated terminations... must be approved by the appropriate company General Manager, who, during the process of determination and prior to action, must consult with the responsible Regional Industrial Relations and Personnel Manager, Group Industrial Relations and Personnel Staff... [S]uch prior consultation will be through the Group's Director of Personnel." And the document entitled "Employee Status and Change Notice" which recorded Jessee's "involuntary termination" has a heading entitled "Approvals" under which appear several signatures *other* than Stankis'. Also there is evidence that Stankis and Swanson conferred prior to Jessee's discharge and that Swanson did not have authority to terminate employees. Had the evidence established Stankis' absolute right to discharge Jessee without consultation with his superiors summary judgment would properly have been granted to both Stankis and Swanson — to Stankis because he cannot conspire to do that which he had a legal right to do and, therefore, to Swanson because two or more persons are required to form a conspiracy. See generally *Ga. Power Co. v. Busbin,* 242 Ga. at 614-615, supra. However, since the evidence did not establish Stankis' absolute authority in this matter, there remains genuine issues for resolution, i.e., whether Stankis is a "third person" and, if so, whether he and Swanson conspired to procure Jessee's

discharge.

The corporate defendant would, of course, not be liable to Jessee under this theory for the reasons expressed in Division 3 of *Busbin,* supra: "[A]ny attempt to impute to [American Standard, Inc.] any conduct of [Stankis] in procuring the discharge of [Jessee] that the jury might have deemed to be without authority and wrongful would be an improper application of the rule that corporations are liable for the acts of their agents because [Stankis] could not lawfully be held to be liable to [Jessee] unless, as aforesaid, he was a 'third person' who induced the employer to discharge the employee, rather than an agent acting for the corporation. [Cit.]"

4. Jessee's complaint also alleges that he has been slandered because his employment records reflected he had been "discharged" for "poor job performance." However, Jessee himself admitted that "[a]s far as I know nobody except me and Mr. Stankis and my lawyer [knows I was discharged for poor job performance.]" Thus Jessee's pleadings as to the slander issue were pierced, the evidence showing that there had been no publication of the allegedly slanderous words. See generally *King v. Schaeffer,* 115 Ga. App. 344, 346 (5) (154 SE2d 819) (1967), affirmed with direction, 223 Ga. 468 (155 SE2d 815) (1967). Compare *Garren v. Southland Corp.,* 237 Ga. 484 (228 SE2d 870) (1976) (libel).

5. It follows that, for the reasons discussed in Divisions 1, 2 and 4 above, the trial court erred in denying summary judgment to the defendants and that, for the reasons discussed in Division 3, it was not error to deny summary judgment to the individual defendants. Cf. *Henderson Mill Ltd. v. McConnell,* 237 Ga. 807, 809 (2) (229 SE2d 660) (1976). Accordingly, we reverse the order of the trial court insofar as it denied summary judgment to the corporate defendant and affirm insofar as it denied summary judgment to the individual defendants on the claim that they unlawfully interfered with Jessee's contract of employment.

*Judgment affirmed in part and reversed in part. Deen, C. J., and Quillian, P. J., concur. Shulman, J., not participating.*

ARGUED MAY 7, 1979 — DECIDED JUNE 26, 1979 — REHEARING DENIED JULY 12, 1979 —

*Parker & Ferguson, John Tye Ferguson,* for appellants.

*N. William Pettys, Jr.,* for appellee.