69781. BEAULIEU OF AMERICA, INC. et al. v. CORONET INDUSTRIES, INC.
(327 SE2d 508)

BANKE, Chief Judge.

The appellee, Coronet Industries, Inc., brought this action to recover for the appellants' alleged breach of a contract to purchase a dye application plant. The appellants moved for summary judgment on the ground that the written memorandum of the transaction signed by the parties did not comply with the Statute of Frauds applicable to real estate sales. The trial court denied the motion, and we granted an interlocutory appeal.

The salient facts are not in dispute. In late December of 1982, appellants Bouckaert and De Clerck, representing the so-called "Beaulieu Group" of companies, met with Walter J. Moryl, vice-president and treasurer of Coronet Industries, to discuss the possible purchase of some equipment from Coronet's Henley Plant. Moryl informed De Clerck and Bouckaert that none of the equipment was for

sale at the time but told them some of it might be available for sale by the end of April. In early May of 1983, Bouckaert telephoned Moryl to tell him the Beaulieu Group was interested in purchasing the entire Henley Plant. The plant is situated on 16.23 acres of land and includes a 296,782 square foot manufacturing building.

On June 1, 1983, appellants Delbaere and Bouckaert signed a 1-page memorandum styled as a letter to Moryl and referenced, "Offer to Purchase Henley Plant, Letter of Intent." This document, which had been prepared by Coronet's counsel, provided in pertinent part as follows: "This will confirm the understanding between the Beaulieu Group and Coronet Industries, Inc., that the Beaulieu Group hereby offers to purchase the plant and equipment as is, where is, as an asset purchase, located at South Hamilton Street, Dalton, Georgia, known as the Henley Plant, . . . for a total purchase price of Three Million Four Hundred Thousand ($3,400,000) Dollars (U. S.) payable at closing. We understand that acceptance is subject to approval by Coronet . . . and you have indicated you will present our offer promptly. The offer is subject to Coronet being able to provide clear marketable title to the plant, real estate and equipment and definitization of suitable documents . . . *This Letter of Intent is subject to mutual agreement as to an inventory of assets to be completed June 20, 1983.* The offer expires at the close of business June 24, 1983. If you agree with the contents hereof, kindly acknowledge the second copy." (Emphasis supplied.) As requested, Moryl executed his acceptance of these terms on behalf of Coronet.

Bouckaert visited the Henley Plant on June 20th to inventory the equipment, whereupon he learned that some items had been removed from the plant and others had been "red-tagged" to indicate that they were not to be included in the sale. When he objected, the Coronet representatives on the scene agreed that the Beaulieu Group could have some of the disputed items but referred him to Mr. Moryl with regard to the remaining ones. Moryl testified in his deposition that he reached a final, oral agreement with Bouckaert regarding these items on June 21st. Bouckaert denies a final agreement was ever reached.

On or about June 23, 1983, Moryl sent Bouckaert a letter stating as follows: "Coronet Industries, Inc., hereby accepts the Beaulieu Group's offer to purchase the plant and equipment as is, where is as an asset purchase, located at South Hamilton Street, Dalton, Georgia, known as the Henley Plant . . . for a total purchase price of three million four hundred thousand (3,400,000) dollars (U. S.) payable at closing which we have mutually agreed will be July 8, 1983, in the offices of Coronet Industries on Coronet Drive. Acceptance of this offer acknowledges mutual agreement as to an inventory of assets which was completed on or about June 20, 1983. If you agree with the con-

tents hereof, kindly acknowledge the second original."

Bouckaert refused to sign this letter. Coronet later sold the plant and some of the equipment to another purchaser for a lesser price, pursuant to a lengthy and detailed "Purchase and Sale Agreement." In this suit, it seeks to recover damages for the loss of its bargain with the appellants, plus interest and attorney fees.

In denying the appellants' motion for summary judgment, the trial court concluded that although the contemplated sale was a "package" deal, two separate Statutes of Fraud were applicable, the real estate aspect being governed by the general statute, OCGA § 13-5-30, and the personal property aspect by the less stringent UCC statute applicable to the sale of goods, OCGA § 11-2-201. Concluding that the "Letter of Intent" contained a sufficient description of the real estate to meet the requirements of OCGA § 13-5-30 and that, pursuant to OCGA § 11-2-201 (3), a contract for the sale of the equipment could be established by proof of certain admissions allegedly made by Bouckaert, the trial court ruled that a question of fact existed as to whether the parties had entered into an enforceable contract. *Held*:

The "general" Statute of Frauds is applicable by its terms to "[a]ny contract for sale of lands, or any interest in, or concerning lands . . .," OCGA § 13-5-30 (4), whereas the UCC statute is applicable only to "transactions in goods." OCGA § 11-2-102. "The Uniform Commercial Code does not purport to change the law relating to instruments which transfer an interest in land." *Newton v. Allen*, 220 Ga. 681, 684 (141 SE2d 417) (1965).

It is undisputed that the contemplated sale in this case was a "package deal," involving the transfer of both real and personal property in exchange for a single cash consideration; and there is no logical basis upon which the consideration may be allocated between the real and personal property components of the deal. Compare *Foster v. Colo. Radio Corp.*, 381 F2d 222 (10th Cir. 1967) (where the sale of a radio station was held to be readily divisible between its "goods" and "non-goods" components) and *Martin v. McCaige*, 492 P2d 770 (Ore. 1972) (where the parties' oral agreement to sell certain goods in connection with the sale of a ranch was determined to be separate from their earlier contract for the sale of the ranch itself). Under the circumstances of the present case, there is simply no way the parties could have reached a legally enforceable agreement for the sale of the real estate in the absence of an agreement on the equipment to be included in the deal.

" 'The writing or memorandum of the contract, to meet the requirements of [§ 13-5-30], must be complete in itself, with nothing left to parol. [Cit.] It must show all the terms of the contract, the parties, and their assent thereto, in addition to showing the fact that there was a contract between the parties. [Cits.]' " *American Std. v.*

*Jessee*, 150 Ga. App. 663, 664 (258 SE2d 240) (1979). " 'If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement, even [though] the negotiations evidenced a complete willingness, or even an announced determination, to agree in the future upon such issues as might subsequently arise, it must still follow that a valid and binding contract was not made as of the earlier date. [Cit.] 'Unless all the terms and conditions are agreed on, and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect.' [Cit.]" *Wells v. H. W. Lay & Co.*, 78 Ga. App. 364, 367 (50 SE2d 755) (1948).

The "Letter of Intent" signed by the parties clearly specified that the contemplated sale was contingent on a future agreement by them regarding the inventory of assets. Thus, the document did not meet the requirements of § 13-5-30 and did not give rise to an enforceable contract for the transfer of an interest in real estate. It follows that the trial court erred in denying the appellants' motion for summary judgment.

The cases cited by the appellee do not require a contrary conclusion but instead highlight the deficiencies of the "Letter of Intent." In *Sprayberry v. Wright*, 116 Ga. App. 748, 751 (2) (a) (159 SE2d 102) (1967), for example, the written agreement did not provide for any future negotiations but specified that *all* the property and equipment owned by the seller at the address where the business was located was to be included in the deal. Similarly, in *Irwin v. Dailey*, 216 Ga. 630 (3) (118 SE2d 827) (1961), involving a hotel lease, the contract applied by its terms to *all* the equipment and furniture located in the hotel on the date of the contract, with the exception of certain specified articles.

We recognize that there is at least some authority for disregarding the general Statute of Frauds in favor of the UCC statute where the real estate component of a "mixed" sale is relatively minor in comparison to the goods component. See *Dehahn v. Innes*, 356 A2d 711 (Me. 1976). However, the case before us certainly does not fall into that category. To allow the admission of parol testimony to prove the existence of a contract in the present case would be to subvert one of the primary historical objectives of the Statute of Frauds, which is to protect title to real estate from the vagaries and uncertainties attendant upon the reception of parol evidence. See generally 37 CJS Frauds, Statute of, § 68, pp. 576-577; 72 AmJur2d, Statute of Frauds, § 44, pp. 604-605. That the appellee in this case was fully capable of complying with the statute is evidenced by the fact that when it did finally sell the plant, it did so pursuant to a detailed "Purchase and Sale Agreement" rather than a mere "Letter of Intent."

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

Decided February 6, 1985 —
Rehearing denied February 27, 1985 —

*Thomas B. Branch III, Brian N. Smiley, Warren N. Coppedge, Jr.*, for appellants.
*John T. Minor, George B. Haley, Jr.*, for appellee.