A97A1740. OCEANMARK BANK, F.S.B. v. STUBBLEFIELD et al.
A97A1741. BRIGHTER DAY MORTGAGE, INC.
v. STUBBLEFIELD et al.
(496 SE2d 465)

JOHNSON, Judge.

When Beauregard and Barbara Stubblefield inquired about a home mortgage loan at Brighter Day Mortgage, Inc., Mr. Stubblefield told the loan processor that he and his wife would be unwilling to give anyone copies of their federal income tax returns as part of the loan application. Brighter Day contacted a representative of Oceanmark Bank, F.S.B., one of several lenders with which Brighter Day worked, and told the representative of the Stubblefields' position with regard to providing tax documents. The Oceanmark representative reviewed Oceanmark's mortgage reference guide and located a program which did not require tax returns as part of the application. The Stubblefields' loan application was submitted under that program. A few weeks later, Brighter Day issued a letter addressed "To Whom it May Concern," stating that the Stubblefields' application had been approved subject to certain documentation being provided; the listed documentation did not include tax returns. Several weeks thereafter, Brighter Day issued another letter stating that the loan had been approved for a one-year adjustable rate mortgage in the amount of $264,000 at an interest rate of 7.250 percent. At closing, the closing attorney requested that the Stubblefields sign a form requesting copies of their tax returns. When they refused to sign the document, the loan did not close. The Stubblefields and Oceanmark subsequently negotiated and closed another loan which did not require execution of the tax return release form, but had a higher interest rate.

The Stubblefields sued Brighter Day and Oceanmark, claiming they breached their commitment to loan the money at the lower rate without requiring the submission of tax documents. Brighter Day denied making any loan commitment and filed a cross-claim against Oceanmark, alleging it breached its loan commitment to Brighter Day. Oceanmark denied the existence of any agency relationship

between it and Brighter Day, denied making any loan commitment, and filed a cross-claim alleging that Brighter Day breached an agreement with Oceanmark and was obligated to indemnify it in connection with the Stubblefields' suit.

Oceanmark moved for summary judgment as to both the Stubblefields' and Brighter Day's claims. Brighter Day moved for summary judgment against the Stubblefields on their complaint and against Oceanmark on Oceanmark's indemnification cross-claim. The trial court denied the motions. We granted Oceanmark's application for interlocutory appeal. Oceanmark appeals in Case No. A97A1740. Brighter Day files a cross-appeal in Case No. A97A1741.

1. Because the issue of whether any loan commitment was made to the Stubblefields is critical to both appeals, we examine it first. To be binding, any commitment to lend money must be in writing and signed by the party to be charged or some person lawfully authorized by him. OCGA § 13-5-30 (7). The Stubblefields claim that the letters from Brighter Day stating that the loan was approved constituted written loan commitments. The Stubblefields add that Brighter Day was acting under the direction of Oceanmark.

However, we find that the letters were not sufficiently definite to constitute binding loan agreements because neither specified a maturity date. A loan agreement which fails to specify a maturity date is unenforceable. See *Wachovia Bank of Ga. v. Mothershed*, 210 Ga. App. 853, 855 (2) (437 SE2d 852) (1993). Furthermore, the letters do not contain specific provisions regarding the rate of interest after the first year, such as the maximum rate of or cap on the rate of interest. Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, the agreement is of no effect. *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 402 (2) (422 SE2d 277) (1992); *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977). Therefore, no enforceable loan commitment was made.

## Case No. A97A1740

2. Based on our finding in Division 1, Oceanmark's contention that the trial court erred in denying its motion for summary judgment when it never made any commitment to loan money to the Stubblefields is correct. Moreover, even if the letters constituted loan commitments, they did not bind Oceanmark because they were not signed by anyone authorized by Oceanmark to make such a commitment. The purported commitment letters were written on Brighter Day stationery and signed by Brighter Day loan personnel. When a contract required by the statute of frauds to be in writing is executed by an agent, the authority of the agent to execute the agreement must also be in writing. See *Brookhill Mgmt. Corp. v. Shah*, 197 Ga.

App. 305, 306 (398 SE2d 290) (1990).

The Stubblefields have not pointed to any writing wherein Oceanmark authorized Brighter Day to commit Oceanmark to lend money. In fact, the Correspondent Agreement between Oceanmark and Brighter Day specifically states that Brighter Day is not Oceanmark's agent and that Oceanmark retains the right to refuse any mortgage loan application for any reason. There being no evidence of Oceanmark's commitment to lend money to the Stubblefields, on its own or through an agent, the trial court should have granted Oceanmark's motion.

3. The trial court also erred in denying Oceanmark's motion for summary judgment against Brighter Day. As to Brighter Day's cross-claim for breach of a commitment to fund the loan, there was no written loan commitment between Oceanmark and Brighter Day. Therefore, summary judgment should have been granted.

4. However, the trial court properly denied Oceanmark's motion for summary judgment on Oceanmark's indemnification cross-claim against Brighter Day. Oceanmark relies on paragraph four of the Correspondent Agreement between it and Brighter Day, which provides: "[Brighter Day] hereby agrees to protect, indemnify and hold harmless Oceanmark in respect to any and all losses, liabilities, costs and expenses, including Attorney's fees at Arbitration, Trial and Appeal, that may be incurred by Oceanmark with respect to or connected with or resulting from any breach of covenant, representation, or warranty, made by [Brighter Day] hereunder." Oceanmark contends Brighter Day breached the Correspondent Agreement by representing itself to be Oceanmark's agent when the agreement expressly provided that Brighter Day was "not to hold itself out as an agent" of Oceanmark. Oceanmark argues that because Brighter Day breached the agreement, Oceanmark incurred attorney fees in defending itself, which fees Brighter Day is required to pay pursuant to the agreement. In moving for summary judgment, however, Oceanmark did not point to any evidence in the record that Brighter Day held itself out to be Oceanmark's agent. In fact, Brighter Day's witness denied acting as an agent for Oceanmark. Therefore, while no genuine issue of material fact remained as to the indemnification claim, it was Brighter Day, not Oceanmark, which was entitled to judgment as a matter of law. See generally *Pitts v. Bank South Corp.*, 209 Ga. App. 124, 125 (433 SE2d 96) (1993). See Division 6, infra.

*Case No. A97A1741*

5. Brighter Day contends the trial court erred in denying its motion for summary judgment against the Stubblefields. As discussed in Division 1 above, there was no valid loan commitment.

Accordingly, the trial court erred in denying Brighter Day's motion for summary judgment against the Stubblefields.

6. Brighter Day's motion for summary judgment on Oceanmark's indemnification cross-claim should have been granted. As discussed in Division 4, Brighter Day was not obligated to indemnify Oceanmark for costs incurred in responding to the Stubblefields' complaint. Therefore, the trial court erred in denying Brighter Day's motion for summary judgment on the cross-claim.

*Judgment affirmed in part and reversed in part in Case No. A97A1740. Judgment reversed in Case No. A97A1741. Pope, P. J., concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

I concur fully with the majority opinion, as it accurately reflects the current state of the law. However, I write separately to express my concern about the inequities resulting from an application of the law to the business of real estate loans as generally practiced.

OCGA § 13-5-30 was amended in 1988 to require that "[a]ny commitment to lend money" be in writing in order to be enforceable. OCGA § 13-5-30 (7). As discussed in the majority opinion, case law establishes that, unless agreement is reached on all terms and conditions and nothing is left to future negotiations, a purported agreement is merely an "agreement to agree" and is unenforceable. *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 402 (2) (422 SE2d 277) (1992).

In residential loan transactions, a prospective borrower will either deal directly with the lender or, as in the present case, utilize a loan broker who undertakes to obtain a loan from a third party. In either case, the borrower is typically induced to submit a loan application by the lender's or broker's representation that doing so will "lock in" an interest rate for a period of time. The "lock-in" documents rarely contain more than the interest rate, the term of the loan and the period for which it is "locked in." It would no doubt surprise many borrowers to learn that, under the current state of the law as reflected in the majority opinion, few "lock-in" agreements could be enforced. As such lock-in agreements do not constitute a commitment to lend money, under the present law, the borrower has no enforceable rights under his "agreement." This is true even if the borrower is approved for the loan and totally performs his obligations. The borrower often does not learn of this fact until the time of closing when it may be too late as a practical matter to seek another lender or refuse to close.

Similarly, once a borrower has submitted all required documentation, he often receives a letter from the lender or broker informing him that he has been "approved" for the loan at a stated rate and

term. However, unless these approval letters contain the additional terms of the loan, they are unenforceable as commitments to lend money under the present law.

It should be noted that the borrower's reliance upon the largely unenforceable "lock-in" agreement has very real consequences to the prospective borrower and the seller. A "lock-in" agreement obtained at the time of loan application induces the borrower to refrain from seeking financing from another source. An "approval" letter assures the borrower that the promised funding, with the agreed upon terms, will, in fact, occur and induces him to take no further action prior to closing. In addition, as in the present case, such a letter is often addressed "To Whom It May Concern" and is intended to assure the seller that the borrower will be able to perform at closing.

The fact that these agreements are usually totally unenforceable should concern all parties, particularly since they are generally understood to be "agreements" and are often couched in binding language. The law, as it stands, invites fraud and abuse on the part of unscrupulous lenders and brokers. This Court, however, must apply the law as it stands, and only the legislature is authorized to address this problem.

DECIDED JANUARY 13, 1998 —
RECONSIDERATION DENIED FEBRUARY 2, 1998 

*Morris, Schneider & Prior, Larry W. Johnson,* for appellant (case no. A97A1740).

*Stephen J. Sasine,* for appellant (case no. A97A1741).

*Gregg Loomis,* for appellees.