**OFFICEMAX, INC. Plaintiff,**

v.

**Gerald L. SAPP, d/b/a G.S. Properties, Defendant.**

**No. 7:99–cv–27 (WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Feb. 13, 2001.

John Reid Bennett, Valdosta, GA, for plaintiff.

John T. McGoldrick, Jr., Macon, GA, Carlton A. Fleming, Jr., Tifton, GA, for defendant.

## *ORDER*

OWENS, District Judge.

Before the Court is Defendant's Motion For Summary Judgment Or, In The Alternative, To Dismiss For Lack Of Subject Matter Jurisdiction.

### *I. Background*

Defendant Gerald Sapp owns approximately 12 acres of land located east of Interstate Highway 75 in Tifton, Georgia. In the Spring of 1998, Defendant began to build a shopping center on the land. At the same time, an agent of OfficeMax, Inc. (herein after "OfficeMax" or the "Plaintiff") approached Defendant to discuss the possibility of OfficeMax leasing a portion of the property for use as a retail store.

In May 1998, a real estate broker and Gerald Sapp met to discuss an agreement to build and lease retail space to Office-Max. After the meeting, Sapp proposed a build to suit lease offer to OfficeMax, and requested that OfficeMax forward a letter of intent for execution. A letter of intent was signed by an agent of OfficeMax, and the letter was then signed by Defendant on July 1, 1998.

The letter anticipated a 15 year lease between the parties with a provision for four options, each five years in duration. The size of space to be leased would be 23,500 square feet "with the exact configuration subject to OfficeMax's review. The location of the space was not set forth in the letter. It appears that a proposed site plan was included with the letter of in-

tent." *See Victoria Johnson Aff.* ¶ 6. This site plan was "[s]ubject to[r]eview by Tenant." *Letter to Gerald Sapp from Julie Solomon of June 22, 1998* at 1.

Included in the signed letter of intent signed by the parties, was a clause entitled "Non Shop" that provided:

> The Landlord and its principal shareholders or partners, employees, agents and representatives a) will not initiate the with third parties or respond to solicitations by third parties relating to the lease of the referenced premises in whole or in part, b) will immediately notify Tenant if any third party attempts to initiate any such solicitation, discussion or negotiations with Landlord and c) will not enter into agreement with respect thereto with any third party. The Landlord hereby agrees that it shall be legally bound by the provisions of this paragraph and Landlord's violation of this paragraph will cause irreparable injury to Tenant. discussion, or negotiations

*Id.* at 3.

Plaintiff's attorney submitted the first draft of the lease agreement to Defendant on July 31, 1998. This draft contained certain restrictions on the use of surrounding property. These restrictions were of three types: 1) restrictions on direct competition; 2) restrictions on the use of property within a certain proximity to the proposed store for the use of offices and restaurants; and 3) restrictions on the use of the entire shopping center for uses such as day care facilities, bars, and entertainment facilities. *See Def.'s Ex. 7* ¶ 21. There was some discussion between the parties regarding the scope of the restrictions and how much of the shopping center they applied to. This resulted in Defendant forwarding comments and changes to OfficeMax on August 24, 1998. *See Letter to Victoria Johnson from Carlton Flemming of Aug. 24, 1998.* OfficerMax sent execution counterparts of the lease agreement to Defendant on October 13, 1998.

At the same time Defendant was negotiating with OfficeMax, Defendant also began to negotiate with Staples, a competitor of Plaintiff, to build and lease space at the same mall contemplated by the letter of intent. On December 16, 1998, Defendant and Staples signed a lease agreement covering a portion of the mall. Consequently, OfficeMax and Defendant ceased all negotiations.

Plaintiff claims that Defendant breached the agreement to lease and seeks to recover damages under theories of breach of contract and promissory estoppel.

## II. Discussion

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995).

The evidence and all reasonable factual inferences arising from it must be viewed in the light most favorable to the plaintiff, the non-moving party. *See Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). The movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in Fed.R.Civ.P. 56(c), genuine issues of material fact ne-

cessitating a trial. *See id.* at 324, 106 S.Ct. 2548. "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The mere presence of an alleged factual dispute between the parties does not make summary judgment improper; a genuine issue of material fact must exist for a court to deny summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Letter Of Intent

Plaintiff argues that the letter of intent represented an agreement to lease space at Defendant's proposed strip mall.

Defendant argues that the parties never reached an agreement on all of the essential terms of the lease. Specifically, Defendant notes that the letter fails to mention anything about restrictions that would be imposed on the property adjacent to that which Plaintiff would lease. Therefore, Defendant argues that there was no binding agreement to lease and that the Non–Shop clause was not binding as part of the letter of intent.

Plaintiff suggests that an agreement was reached on the essential terms of the contract. As evidence of such, Plaintiff notes that its attorney sent execution copies of the lease agreement to Defendant on October 13, 1998. *See Johnson Dep.* at 55. Plaintiff argues that such copies are not sent unless an agreement has been reached. *See id.* at 57. Plaintiff also proffers the fact that Defendant's attorney stated that he was ready to finalize the contract after the final draft was sent, and that Defendant was "ready to sign." *See Pl.'s Brief* (citing *Flemming Dep. Ex. 6* ).

Georgia courts have held that agreements to execute a lease may be enforceable despite the parties' failure to sign an actual lease. *See Doll v. Grand Union Co.,* 925 F.2d 1363, 1368 (11th Cir. 1991). "As long as the court can extract the essential terms of the lease from the contract to sign the lease, the contract will be enforced." *Id.*

Georgia courts will not hold that agreements to execute a lease are enforceable if the parties have not agreed to all of the essential terms and conditions of the lease. *See American Viking Contractors v. Scribner Equip. Co.,* 745 F.2d 1365, 1369–70 (11th Cir.1984) (noting that "[t]he law of Georgia is clear that unless all terms and conditions are agreed upon and nothing is left to future negotiations, a contract to enter into a contract in the future is a nullity"). *See also Hartrampf v. Citizens & Southern Realty Investors,* 157 Ga.App. 879, 278 S.E.2d 750, 752 (1981) ("Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect"); *Poulos v. Home Fed. Savings & Loan Assn.,* 192 Ga.App. 501, 385 S.E.2d 135, 137 (1989) ("agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto").

The letter of intent did not memorialize an agreement on many of the essential terms of the lease.[1] There is no mention of the restrictions that Plaintiff sought to have placed upon the surrounding property. It is unclear whether the parties ever reach an agreement on the issue of restriction, but, even when viewing the facts in a light most favorable to Plaintiff, it is clear that this issue was not resolved when the parties signed the letter of intent. Negotiations on this issue continued for months after the signing of the

---

1. The essential terms of the lease would have to be found in a signed writing by Defendant because it involved a conveyance of an interest in real estate. *See Ga.Code Ann.* § 13–5–30; *Beaulieu of America, Inc. v. Coronet Indus., Inc.,* 173 Ga.App. 556, 327 S.E.2d 508, 510 (1985)

letter of intent. *See, e.g., Flemming Dep. Ex. 8 ¶ 21; Flemming Dep. Ex. 10.*

On September 29, 1998, Defendant may have communicated to Plaintiff that he was ready to sign, but the Court must determine if an agreement on all essential terms was reached on June 22, 1998, the date the letter of intent was signed. *See Warner Robins Supply Co. v. Malone,* 143 Ga.App. 332, 238 S.E.2d 709, 712 (1977).

The Court concludes that the parties never reached an agreement on all essential terms of the lease. The letter of intent did not represent a lease agreement nor an agreement to sign a lease.

### C.  Non–Shop Clause

■ Defendant argues that the Non–Shop clause is unenforceable as a separate covenant. In support of this notion, Defendant argues that: (1) the clause is not supported by independent consideration; and (2) the Non–Shop clause is not sufficiently definite at to all of its essential terms to be enforced. Defendant suggests that any implied promise that Plaintiff would finalize an agreement with Defendant was not sufficiently definite to have been enforced by Defendant. Defendant argues that because the promises are indefinite, the Non–Shop clause is lacking in mutuality and cannot be enforced against Defendant.

### 1.  Independent Consideration

Defendant argues that the only possible consideration for the Non–Shop clause are mutual promises between the parties, and suggests that a promise may only constitute consideration if it is of such a nature that it can be enforced against the promisor by the promisee. Defendant argues that any implied promise made by Plaintiff was not sufficiently definite to have been enforced against itself by Defendant, and therefore Plaintiff may not enforce the Non–Shop clause because it lacks consideration.

Plaintiff responds, stating that it made a promise of a forbearance of a legal right. It notes that upon signing the letter of intent with the Non–Shop clause, it ceased to view other properties. Plaintiff suggests that it gave up its legal right to view other properties in exchange for the promise of the Defendant not to negotiate with third parties regarding the lease of the proposed space. Plaintiff states that it promised it was interested in leasing space in the shopping center in return for the Non–Shop clause. Plaintiff also states that it promised to cease viewing other prospective properties. Plaintiff suggests although the promise may have been implied, its behavior was sufficient under Georgia law.

Plaintiff suggests that the express language of the Non–Shop clause demonstrates that it was part of a bargained for exchange, citing to the following language: "[t]he Landlord hereby agrees that it shall be legally bound by the provisions of this paragraph and Landlord's violation of this paragraph will cause irreparable injury to Tenant." *Kainz Dep. Ex. 6 at 3.*

It appears from the cited language that Defendant agreed to a forbearance, but that language does not evidence that Plaintiff has provided any consideration to Defendant. Nothing in the Non–Shop clause evidences that Plaintiff provided consideration.

Defendant claims that any implied promise on the part of Plaintiff would merely be illusory because there were no other acceptable sites to view in the Tifton area. Even when looking at the facts in a light most favorable to Plaintiff, the Court finds that there were no other appropriate sites in the Tifton area. *See Pl.'s Answer to Def.'s Interrog. No. 3* (stating that the only other potential site, i.e. property at the Tifton Mall, was not acceptable); *Kainz Dep.* at 48.

■ "While '[a] promise of another is a good consideration for a promise' ... 'the promise in each instance must be of such a

character as to be capable of enforcement against the party making it, as otherwise neither party will be bound.'" *McMurray v. Bateman,* 221 Ga. 240, 144 S.E.2d 345, 353 (1965) (citation omitted). The Court finds that there was no explicit promise not to view other properties. Therefore Plaintiff must rely upon the argument that consideration was provided as an implied promise not to view other properties.

■ "An implied promise may be a sufficient consideration for an express promise." *Klag v. Home Ins. Co.,* 116 Ga.App. 678, 158 S.E.2d 444, 445 (1967). However, "mere forbearance by a [party], without even so much as a request therefor, would not have afforded a consideration for" an express promise. *Loewenherz v. Weil,* 33 Ga.App. 760, 127 S.E. 883, 885 (1925). There is no evidence suggesting that the parties bargained for a forbearance to look elsewhere.[2] The Court finds no implied promise in this case. *See European Bakers, Ltd. v. Holman,* 177 Ga.App. 172, 338 S.E.2d 702, 704 (1985) (holding "[s]ince there was no bargaining for appellants' forbearance to purchase from others; that voluntary choice to buy from appellees would not be consideration").

### 2. Essential Terms of Non–Shop Clause

Defendant alternatively argues that the Non–Shop clause essential terms are too indefinite to be enforceable because neither the duration nor an adequate description of the property are provided in the clause.

#### a. Duration

■ "A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible." *Bagwell–Hughes, Inc. v. McConnell,* 224 Ga. 659, 164 S.E.2d 229, 231 (1968) (quoting *West v. Downer,* 218 Ga. 235, 127 S.E.2d 359, 364

(1962)). A contract cannot be enforced if it is not specific with respect to all of the essential terms of a contract. *See, e.g., Oceanmark Bank, F.S.B. v. Stubblefield,* 230 Ga.App. 399, 496 S.E.2d 465, 467 (1998) (no loan agreement because purported agreement failed to specify maturity date).

■ Time and subject matter are essential terms of a promise that must be definite to warrant its enforceability. *See Farmer v. Argenta,* 174 Ga.App. 682, 331 S.E.2d 60, 61–62 (1985) (citing *Parks v. Atlanta News Agency,* 115 Ga.App. 842, 156 S.E.2d 137, 139 (1967)). Where the duration of a contract is determinable solely by one party due to the lack of any specified length, it is unenforceable. *See id.* (finding a contract granting a seller a leasehold "as long as necessary until seller finds new home" too indefinite to be enforceable).

■ A contract that is terminable at will and does not require notice of termination may be terminated without such notice. *See City Stores Co. v. Henderson,* 116 Ga.App. 114, 156 S.E.2d 818, 823 (1967).

■ The duration of the Non–Shop clause is undeterminable from the document. Therefore, even assuming there was a valid agreement, the agreement would have been terminable at the will of Defendant. Plaintiff concurs that the agreement was terminable at will, but suggests that Defendant never terminated the agreement. *See Pl.'s Resp.* at 17. However, as noted *supra,* a contract where duration is undeterminable is unenforceable. *See Farmer,* 331 S.E.2d at 61–62.

The Non–Shop clause could not be enforced because it did not specify a duration.

---

**2.** Plaintiff can point to no evidence suggesting that an implied promise existed. Plaintiff points to the Non–Shop clause, but nowhere in the letter of intent does evidence exist of Plaintiff's implied promise. In this case, pa-

role evidence of some implicit agreement for Plaintiff to forbear would be inadmissible in what amounts to a breach of contract action. *See Moore v. Bank of Fitzgerald,* 225 Ga.App. 122, 483 S.E.2d 135, 140 (1997).

### b. Identification of Property

Defendant argues that the Non–Shop clause is unenforceable because it does not adequately describe the property encompassed within the Non–Shop clause. Plaintiff disputes Defendant's contention, and argues that the site plan enclosed with the letter of intent sufficiently described the property. Plaintiff further argues that there was never a dispute over the property in question and any dispute was fabricated solely to allow Defendant to negotiate with Staples. Defendant suggests that the site plan does not provide an adequate legal description because it was subject to review by Plaintiff.

■ Georgia law is clear that land described in a contract must be identifiable for the contract to be valid.

> For such a contract to meet the statutory requirements, every essential element of the sale must be expressed therein, and one of the essentials is that the land must be so described by the writing itself that it is capable of identification. While it is not necessary that the land be described with such precision that its location and identity are apparent from the description alone, yet the description must be sufficiently clear to indicate with reasonable certainty the land intended to be conveyed, and parol evidence can not be invoked in aid of a vague and uncertain description.

*Smith v. Wilkinson,* 208 Ga. 489, 67 S.E.2d 698, 701 (1951) (citing *Tippins v. Phillips,* 123 Ga. 415, 51 S.E. 410 (1905)). *See also Martin v. Sunset Hill Memorial Gardens, Inc.,* 212 Ga. 159, 91 S.E.2d 44, 46 (1956) (description so indefinite that property cannot be located cannot be basis for a breach of contract suit). To adequately identify the property, the document should provide a key. The key "must be in the document itself and lead to the establishment and location of boundaries as of the time of the execution of the contract." *McCumbers v. Trans–Columbia, Inc.,* 172 Ga.App. 275, 322 S.E.2d 516, 518 (1984). *See Peripety Group, Inc. v. Smith,* 237 Ga.App. 158, 514 S.E.2d 262, 264 (1999) (a key that allows identification of the property will be an adequate description for purposes of a lease).

■ The letter of intent refers to "Lease of Space at the Proposed Shopping Center on Virginia Avenue In Tifton, Georgia." The only additional descriptions offered "Size: approximately 23,500 square feet with the exact configuration to OfficeMax's review" and "Site Plan: Subject to Review by Tenant." Assuming arguendo that the Court found the site plan would have provided a sufficient key, the letter of intent stated that the site was subject to review. Therefore the location was subject to change. This causes the description to be inadequate. *See Plantation Land Co. v. Bradshaw,* 232 Ga. 435, 207 S.E.2d 49, 53 (1974) (description dependent upon a future act is insufficient).

### D. Promissory Estoppel

■ Defendant argues that Plaintiff cannot recover under a theory of promissory estoppel because promissory estoppel is not available with respect to a promise that can be terminated at will.

> Under the Georgia action for promissory estoppel, the essential elements are that: (1) the defendant made a certain promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise or promises; (3) plaintiff did, in fact, rely on such promise or promises to his detriment; and (4) an injustice can be avoided only by the enforcement of the promise, because the plaintiff surrendered, forgoes, or rendered a valuable right.

*Simpson Consulting, Inc. v. Barclays Bank, PLC,* 227 Ga.App. 648, 490 S.E.2d 184, 192 (1997) (citing O.C.G.A. § 13–3–44(a)).

■ Georgia law recognizes no cause of action due to promissory estoppel regarding any contracts terminable at will. *See id.* 490 S.E.2d at 193. *See also Jones*

*v. Destiny Industries, Inc.*, 226 Ga.App. 6, 485 S.E.2d 225, 227 (1997) (promissory estoppel has no application where promise relied on was for employment or agency relationship for an indefinite period).

As noted supra, Defendant's promise was terminable at will. Therefore, Plaintiff cannot rely on promissory estoppel to recover.

### III.  Conclusion

Plaintiff is barred as a matter of law from recovering under theories of breach of contract or promissory estoppel. Defendant's motion for summary judgment is **HEREBY GRANTED**.